237 N.J. Super. 604 (1990)
568 A.2d 907
MILES M. STUCHIN, ADMINISTRATOR C/T/A OF THE ESTATE OF BERNARD H. STUCHIN, PLAINTIFF-RESPONDENT, CROSS-APPELLANT,
v.
JACOB KASIRER AND ROSE KASIRER, HIS WIFE, DEFENDANTS-APPELLANTS, CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1989.
Decided January 11, 1990.
*606 Before Judges DREIER, SCALERA and D'ANNUNZIO.
Gerard W. Quinn argued the cause for appellants (Cooper, Perskie, April, Niedelman & Wagenheim, attorneys; Kenneth D. Wolfe, Christine M. Cote and Gerard W. Quinn, on the brief).
Ronald M. Katkocin argued the cause for respondent (Horn, Kaplan, Goldberg, Gorny & Daniels, attorneys; Ronald M. Katkocin, on the brief, John J. Markwardt, of counsel).
The opinion of the court was delivered by DREIER, J.A.D.
Defendants, Jacob and Rose Kasirer, the title owners of 210 Grammercy Place, Atlantic City on which is located a convalescent center, appeal from a summary judgment striking defendants' defenses and entering a judgment of foreclosure. Defendants attack the ruling upholding a post-default interest rate adjustment clause, the amount of attorney's fees awarded to plaintiff, and the denial of defendants' motion to reinstate an estoppel claim abandoned by them at trial. Plaintiff, Miles M. Stuchin, Administrator c/t/a of the Estate of Bernard H. Stuchin, the mortgagee, has filed a cross-appeal from the trial judge's denial of plaintiff's motion to amend his complaint to add a count for fraud, and the decision of the motion judge (not the trial judge) to vacate defendants' original default.
*607 On January 25, 1978, defendants executed a "wrap around" mortgage[1] note in favor of Sheldon Farber for $1,650,000, with interest payable monthly at the rate of nine percent per annum. Defendants leased the premises to Golden Crest Convalescent Inc., the nursing home operator. The monthly mortgage payments were historically paid by the tenant directly to the mortgagee. On August 21, 1985, Farber assigned his interest in the mortgage to the plaintiff. On or about January 1, 1987 there was the initial default in the monthly payment of $14,583.33. The default continued for three additional months, and at the end of April plaintiff notified defendants of his intention to accelerate the mortgage. Defendants contended that the tenant was delinquent in its payments, that defendants would immediately begin a dispossess action and promised to make the payments themselves. They also asserted (although plaintiff disputes the fact) that plaintiff had agreed not to assert his legal rights until the parties had an opportunity to work out their problem. Nevertheless, plaintiff brought an immediate foreclosure action. Defendants failed to answer, and a default judgment was entered in the amount of $1,513,392.96 plus costs and counsel fees in the amount of $7,500.
Four weeks later, defendants obtained an order to show cause which the court treated as a motion to vacate the default judgment. After oral argument the court vacated the judgment on condition that defendants pay all of plaintiff's costs incurred by reason of defendants' original failure to answer the *608 complaint; that all monthly mortgage payments from January 1, 1987 through January 13, 1988 (13 payments) be paid (and that plaintiff could accept and receive the payments without prejudice); and that an escrow be established in the amount of $196,441.94, representing additional interest claimed by plaintiff and disputed by defendants.
Defendants thereafter filed their answer raising two principal defenses, first that the mortgage clause increasing the contract rate of nine percent to two percent per month (24% per annum) after default constituted usury and therefore was unenforceable, and, second, that plaintiff should be estopped from claiming a default.
During the ensuing period of discovery, plaintiff learned that a prior attorney of defendants was also the attorney for the tenant as well as several of the principals of the tenant, and that defendants were personal friends with at least one of the tenant's principals. Furthermore, defendant Jacob Kasirer was a principal of Eastern Pines Realty Corp., the successor to Golden Crest. On this basis plaintiff moved to amend its complaint to assert fraud. This motion was denied.
Once plaintiff's motion was denied, defendants specifically relinquished their rights to pursue the estoppel defense.[2] Defendants then paid off the mortgage, with the exception of about $5,000 in unpaid disputed interest, the unpaid attorneys' fees and costs in the amount of $449.16. The Sheriff's sale was stayed pending this appeal. We assume that the small balance due will be paid once this appeal is resolved.
We can briefly dispose of the estoppel issue raised by defendants as well as the fraud and vacation of default issues raised by plaintiff. The estoppel issue was not presented to the trial judge, since it was expressly waived. Consequently, we *609 apply the principle that we "will not consider questions not properly presented to the court below when an opportunity to present them was available." Morin v. Becker, 6 N.J. 457, 460 (1951); Skripek v. Bergamo, 200 N.J. Super. 620, 629 (App.Div. 1985), certif. den. 102 N.J. 303 (1985). Defendants unequivocally chose to forego this known claim, clearly establishing a waiver. East Orange v. Board of Water Commissioners, 41 N.J. 6, 17 (1963).
Plaintiff claims that he should have been permitted to amend his complaint under R. 4:9-1 to raise the issue of fraud, since such amendments should "be freely given in the interest of justice." R. 4:9-1. Nevertheless, "there remains ... a necessary area of judicial discretion in denying such motions where the interests of justice require." Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 299 (App.Div. 1977), certif. den. 75 N.J. 528 (1977). The damage from the alleged fraud was the two-month delay during which plaintiff was induced to continue the lower nine percent rate based upon his assumption that defendants were in fact surprised by the tenant's default. We do not fault the trial judge in exercising his discretion, denying leave to amend. The showing of fraud was marginal at best, and the amendment would only have protracted this litigation.
Plaintiff also attacks the vacation of the original default by the motion judge (not the trial judge). The often-stated principle is that an application to vacate a default judgment is "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Marder v. Realty Construction Co., 84 N.J. Super. 313, 319 (App.Div. 1964), aff'd 43 N.J. 508 (1964). The Marder principle was applicable in this setting. See cases collected at Pressler, Current N.J. Court Rules, Comment 1, R. 4:50-1 (1989). It would have been highly inequitable to permit a default judgment to be entered on a mortgage of this size, where a substantial issue of the amount due was raised, and where *610 alternative protection could be afforded such as the escrow of the disputed funds. Plaintiff raises this point only in the event that the trial judge's decision concerning the increased interest rate is overturned. We pass on the decision because we are remanding the matter for reconsideration by the trial judge, and wish to permit him to effect a complete adjudication on remand, without this additional issue remaining open.
The principal issue on appeal is whether the 15% increase in the interest rate on default, from nine percent to 24%, is enforceable.
We agree with the trial judge and plaintiff that the contract provision increasing the interest rate did not violate the usury laws. The version of N.J.S.A. 31:1-1(a) in effect at the inception of this transaction in 1978 set the lawful interest rate at no higher than 9.5%. Putting aside the question whether an interest increase after default constitutes the taking "directly or indirectly for loan of any money ... above the value of ... $9.50 for the forbearance of $100 for a year," as shall be prescribed in a regulation of the Commissioner of Banking N.J.S.A. 31:1-1(a) (prior to subsequent amendments), subsection (b)(1) of the Act enacted by L. 1973, c. 328, (now N.J.S.A. 31:1-1(e)(1)) provides an exemption for loans "in the amount of $50,000.00 or more," subject to exceptions not here pertinent.[3] Therefore assuming arguendo that the increase in interest rate after default qualifies for the application of usury prohibitions, this loan was exempted by the Act.
Even in the absence of the specific exemption, an increase in interest rate effective only upon a borrower's default appears not to be subject to the usury laws. While this point was not raised by plaintiff, we will discuss it briefly. As noted in Restatement, Contracts, § 536 (1932):
§ 536 Bargain for Excessive Interest After Maturity.

*611 Unless especially forbidden by statute a provision in a bargain for a loan that after maturity interest at a higher rate shall be charged than is permissible before maturity, does not render the bargain usurious unless the parties when entering into it contemplate that the loan shall not be paid at maturity.
(The subject matter is not encompassed within the Restatement, Second, Contracts). This principle also has been stated to be the law in New Jersey. The only New Jersey case directly in point is Ramsey v. Morrison, 39 N.J.L. 591 (Sup.Ct. 1877). ("If the gain to the lender, beyond the legal rate of interest, is, by the contract, made dependent on the will of the borrower, as where he may discharge himself from it by the punctual payment of the principal, the contract is not usurious." Id. at 593). Ramsey was relied upon in dictum in Feller v. Architects Display Buildings, Inc., 54 N.J. Super. 205, 213 (App.Div. 1959), discussed in more detail infra. The statement in Ramsey follows the predominant rule in the country. See annotation, Provision for Interest After Maturity at a Rate in Excess of Legal Rate as Usurious or Otherwise Illegal, 28 A.L.R.3d 449 (1969) and later service.
We next treat defendants' claim that the increased interest rate was a penalty. Plaintiff initially claims that defendant had not raised the issue of penalty in the trial court. We note that in the trial court defendants generally referred to their objections under the rubric of "usury." Yet it is clear from the context in which this argument was presented to the trial judge that the claim of usury also included a claim that the increase was an impermissible penalty. In defendants' brief accompanying their notice of motion for summary judgment, they quoted from First Mutual Corp. v. Grammercy & Maine, Inc., 176 N.J. Super. 428 (Law Div. 1980), where Judge Haines stated:
On some occasions courts have refused to enforce an agreed interest rate on the ground that it is penal and unconscionable, even though the borrower was a corporation not entitled to the defense of usury. [Id. at 439-440].
While this point may not have been presented under a separate heading in defendants' brief, the trial judge understood that defendants' claimed the unenforceability of the provision as an *612 unconscionable penalty. The court specifically answered this argument:
But given the facts of this case, and the context in which the twenty-four percent is charged, it's not a rate of interest which I find offensive, or which I find shocks the conscience of the Court, or which is overwhelming or overreaching.
The judge then discussed the nature of the security, a nursing home. He concluded:
But more important and contrary to the position asserted by the Defendant, the increase by way of nine percent to twenty-four percent makes eminent good sense. It is not as a hammer over the head of the property owner so that ultimately he can't pay the twenty-four percent, and there will be a Sheriff's sale. It is to impress on the property owner that he better pay that nine percent and the principal payments as due, or he's going to be hit with a very substantial increase.
Unfortunately, trial counsel did not present the judge with the applicable case law setting forth the standards against which to determine whether the increased interest rate constituted a penalty. We will attempt to do so here.
Different considerations prevail when we leave the subject of usury which statutorily renders the rate agreement illegal, and we enter the equitable analysis of the provision as an unenforceable penalty. As noted in Feller v. Architects Display Buildings Inc., supra, it is not illegal to provide for an interest rate higher than that permitted by the usury laws if the rate is only applied after default.[4] The rate on a portion of the loan in Feller increased from 17% to 32.87%, which the Court found "clearly unconscionable and unenforceable as a penalty." 54 N.J. Super. at 214. Justice (then Judge) Schettino there stated:
It is the general rule in the case of a corporate borrower that it is not illegal to provide for a higher rate of interest than the legal rate after maturity, but if such rate is unconscionably high it will be unenforceable because it amounts to a penalty. [54 N.J. Super. at 213].
The issue was again faced in Spiotta v. William H. Wilson, Inc., 72 N.J. Super. 572 (App.Div. 1962), certif. den. 37 N.J. 229 (1962). There the court found that the 8.58% increase from *613 30.18% to 38.76% was also an "unconscionable and unenforceable" penalty. Id. at 579. Both Feller and Spiotta cite In re Tastyeast Inc., 126 F.2d 879 (3rd Cir.1942), cert. denied sub nom. Modern Factors Co. v. Tastyeast Inc., 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766 (1942), based upon the federal court's assumption of New Jersey law, and which reached a similar result where the original loan rate of 21% increased to 30% on default. As explained by Judge Goldmann in Spiotta
Plaintiff has resorted to a court of equity to enforce his security. He has thereby exposed himself to the operation of equitable principles and must submit to an equitable resolution. [72 N.J. Super. at 579].
We understand the trial judge's conclusion to have been that the increased rate could be sustained because it impressed the property owner to make his payments when due. ("[The higher rate was] to impress on the property owner that he better pay ... or he's going to be hit with a very substantial increase.") This reasoning does not comport with the holdings of Feller and Spiotta. The trial judge's reasoning would have become even more forceful as the penalty increases, a conclusion inimical to the general proposition that courts will deny enforcement to contractual provisions which are penalties. See e.g., Barr & Sons, Inc., v. Cherry Hill Center, Inc., 90 N.J. Super. 358, 376-377 (App.Div. 1966); Westmount Country Club v. Kameny, 82 N.J. Super. 200 (App.Div. 1964). As noted in Westmount:
Parties to a contract may not fix a penalty for its breach. The settled rule in this State is that such a contract is unlawful. [82 N.J. Super. at 205].
In Barr & Sons Inc., we stated:
In order for an agreement fixing the amount of damages made in advance of a breach to be enforceable as a contract it must be shown that (a) the amount so fixed is a reasonable forecast of just compensation for the harm caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimate. [citing Westmount] [90 N.J. Super. at 376-377].
It is clear from Feller and Spiotta that these principles apply in the case of a post-default increase in interest rate. Such a provision may not be viewed by the courts as a vehicle to insure performance of the contract; it must be viewed as a liquidated *614 damage clause, which may properly provide recompense to the lender only for the reasonably estimated cost of the loss of the income or other lost benefit of the bargain. For example, if the lender would be forced to resort to commercial borrowing to replace the lost income, the estimated difference between the rate charged to the defendant and the amount plaintiff would have to pay a commercial lender might have been a fair measure of damages. This example is illustrative only; it should not limit the trial judge in receiving appropriate evidence of the reasonableness or unreasonableness of the 15% rate increase, viewed as of the inception of the loan, and including any reasonable forecasts that could have been made as of that time. While we differ with the trial judge concerning his method of analyzing whether the 15% increase was intended to be a penalty, we do not mean to remove his authority on remand to reanalyze the issue.
The judgment appealed from is reversed insofar as it enforces the increased interest rate provision, and is remanded to the trial court for reconsideration of this issue; in all other respects the judgment is affirmed.
NOTES
[1] Garner, A Dictionary of Modern Legal Usage, 583 (Oxford University Press 1987), explains the wraparound mortgage concept as follows:

Wraparound mortgage is current American legal argot meaning `a deed of trust whereby a purchaser incorporates into agreed payments to a grantor or third-party the grantor's obligation in the initial mortgage.' A court recently defined it as `a junior mortgage that secures a promissory note with a face amount equal to the sum of the principal balance of an existing mortgage note plus any additional funds advanced by the second lender.' Mitchell v. Trustees [144 Mich. App. 302], 375 N.W.2d 424, 428 (Mich. App. 1985) (with minor differences in wording).
[2] Defendants' trial counsel (not the counsel now representing defendants) specifically stated "that we're withdrawing our defenses ... and reserving the right to appeal [the question of] usury."
[3] Loans in excess of $50,000 are separately regulated by N.J.S.A. 2C:21-19a (criminal usury).
[4] In Feller, however, the borrower was a corporation by which the defense of usury could not have been raised in any event. N.J.S.A. 31:1-6.