**In the Matter of TIMBERLINE PROPERTY DEVELOPMENT, INC., Debtor.**

**Bankruptcy No. 89–05287.**

United States Bankruptcy Court, D. New Jersey.

Feb. 6, 1992.

Michael A. Zindler, Lawrenceville, N.J., for debtor.

Karen E. Bezner, Princeton, N.J., for Unsecured Creditors Committee.

J. Chaffin Parrish, Newark, N.J., for City Sav., FSB, in Receivership, Resolution Trust Corp. as Receiver.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### PROCEDURAL HISTORY AND STATEMENT OF THE FACTS

Before the Court is a motion seeking payment of a default rate of interest, late charges and origination fees allegedly owed by Timberline Property Development, Inc., Debtor, ("Timberline" or "Debtor") to City Savings, FSB, in receivership, the Resolution Trust Corporation ("RTC"), as receiver. This Court has jurisdiction pursuant to 28 U.S.C. § 1334.

Debtor was engaged in the construction of single family homes known as Squires Runne, in the Township of Lawrence, New Jersey. A petition for reorganization under Chapter 11 of the Bankruptcy Code was filed on July 7, 1989.

On January 4, 1991, the RTC as receiver for City Savings, F.S.B. (formerly Federal Savings Bank and City Savings Bank, F.S.B.), a creditor of Timberline, moved for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d). A hearing was held on January 28, 1991, at which this Court found that the RTC held valid, first priority liens on the property, but declined to grant relief from the stay.

The lien held by the RTC was a purchase money mortgage in the original principal amount of $2,550,000, on which the RTC alleged that it was owed the principal amount of $840,000. The second lien was a construction mortgage in the original amount of $10,080,000, on which the RTC alleged it was owed the principal amount of $544,320. Both mortgages were oversecured.

In addition, this Court also found that the Debtor owed the RTC interest at the contract rate. This Court reserved decision as to certain amounts sought by the RTC, more specifically described as interest at the default rate, late charges and origination fees.

In February, 1991, the RTC's motion for relief from the automatic stay was reheard. At the close of that hearing, this Court directed the sale of the property by the debtor allowing the property to be sold free and clear of all liens and encumbrances, such liens, if valid, to attach to the proceeds. Payment was to be made to the RTC, but in principal amounts only, pending the receipt of the supplemental affidavits to be submitted by Ms. Margaret Kavanaugh, an asset specialist employed by the RTC. The Court also directed the parties to provide supplemental memoranda of law with respect to the enforceability of the contractual clauses.

The RTC now seeks payment of interest at the default rate, payment of late charges, and payment of origination fees.[1]

---

1. The RTC claimed the following interest and other charges.

 (1) Interest calculated at 12%, on a principal balance of $840,000, for the period of 7/1/89 through 11/30/89:

| | |
|---|---|
| | $155,229.87 |

Interest calculated at the extra 3% default rate of interest, on a principal balance of $840,000 for the period 7/1/89 through 11/30/89:

| | |
|---|---|
| | $ 36,260.00 |

Late charges from 7/1/89 through 11/30/89:

| | |
|---|---|
| | $ 7,341.49 |
| Origination Fee: | $ 48,500.00 |
| Total (exclusive of principal): | $247,331.36 |

 (2) With respect to the construction mortgage:

Interest calculated at 11.5%, on a principal balance of $544,320 for the period 7/1/89 through 11/30/89:

| | |
|---|---|
| | $ 96,798.83 |

The mortgage note contained the following provisions dealing with default rate of interest and late charges:

> If any installment ... remains past due for thirty (30) calendar days or more, the outstanding principal balance of this Note shall bear interest during the period in which the undersigned is in default at a rate three percent (3%) over the rate which would be in effect if there was no default or, if such increased rate of interest may not be collected from the undersigned under applicable law, then at the maximum increased rate of interest, [b]ut in no event less than the contract rate.
>
> Buyer shall pay to the Note holder a late charge of five percent (5%) of any monthly interest installments not received by the Note holder within fifteen (15) days after the installment is due ...

Significantly, at the January 28, 1991 hearing, Ms. Kavanaugh, testified that both the default rate of interest and the late charges were intended to coerce performance by the debtor. (Transcript of January 28, 1991, p. 20–21). Finally, the Note contains no provision with respect to origination fees.

## ISSUES

There are three related issues before this Court:

1) Whether the Resolution Trust Corporation is entitled to payment of interest at a higher default rate;

2) Whether the Resolution Trust Corporation is entitled to the payment of late charges; and

3) Whether the Resolution Trust Corporation is entitled to the payment of Origination Fees.

## DISCUSSION

1. *The Resolution Trust Company Is Not Entitled To The Payment Of Interest At The Default Rate Since The Provision Is An Unenforceable Penalty.*

 The Bankruptcy Code does not provide for postpetition interest on unsecured or undersecured claims. 11 U.S.C. § 502(b). However, if the claim is oversecured, (i.e. where the value of the collateral exceeds the debt obligation) the creditor is entitled to postpetition interest to the extent of the security's value. 11 U.S.C. § 506(b). Pursuant to § 506(b), an oversecured creditor "shall be allowed ... interest on [its] claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." *Id.* Furthermore, the creditor's claim for interest cannot exceed the excess value of the collateral. *Id.* Thus, the oversecured creditor may only receive postpetition interest on the value of the collateral exceeding the claim.[2]

 While the Court must initially look to § 506(b), which allows reasonable fees and costs provided for in an agreement between parties, the ultimate question of whether the disputed fees here are reasonable and allowable is a matter of state law. *In re Virginia Foundry,* 9 B.R. 493 (D.C.Va.1981); *see also Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

Interest calculated at the extra 3% default rate of interest, on a principal balance of $544,320 for the period 7/1/89 through 11/30/89:

| | |
|---|---:|
| | $ 26,027.28 |
| Late charges from 7/1/89 to 11/30/90: | |
| | $ 4,161.16 |
| Origination Fee: | |
| | $ 28,800.00 |
| Total (exclusive of principal): | $155,787.27 |

---

**2.** Section 506(b) states: "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, *is greater than the* *amount of such claim,* there shall be allowed to the holder of such claim, interest on such claim...." (emphasis added).

### A. Under New Jersey Law, The Clause Providing For Default Rate of Interest Is Unenforceable As A Penalty.

The issues of this case focus upon the enforceability of certain clauses included in the mortgage agreement. These clauses impose higher interest rates in the event of a default or a late payment.

In *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the Supreme Court held that 11 U.S.C. § 506(b) entitled a nonconsensual oversecured creditor, as well as a consensual creditor, the right to receive postpetition interest. Thus, a creditor is entitled to postpetition interest as long as it is oversecured. However, neither the Bankruptcy Code nor the Supreme Court has resolved the issue of whether an oversecured creditor is entitled to interest at a higher, though contracted for, default rate of interest. Nevertheless, "[t]he Supreme Court has determined that a bankruptcy court is not empowered to give a creditor rights that state law withholds." *In re White,* 88 B.R. 498, 510 (Bankr. D.Mass.1988), *citing, Butner v. United States, supra.* The determination of whether the contract to increase interest after a default is a penalty, is one of state law and state policy. *In re United Merchants & Mfrs., Inc.,* 674 F.2d 134, 141 (2d Cir.1982); *In re Tastyeast, Inc.,* 126 F.2d 879, 881 (3d Cir.) *cert. den. Modern Factors Co. v. Tastyeast, Inc.,* 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766 (1942); *In re Consolidated Operating Partners, L.P.,* 91 B.R. 113 (D.Colo.1988).

Under New Jersey law, the clauses may be considered provisions for liquidated damages and upheld if they meet certain criteria. New Jersey courts have limited the enforceability of liquidated damages[3] clauses to those instances where it can be shown that: (a) the amount fixed is a reasonable forecast of just compensation for the harm caused by the breach, and (b) the harm that is caused by the breach is one that is incapable of estimation or very diffi-

cult to estimate accurately. *Barr & Sons, Inc. v. Cherry Hill Center, Inc.,* 90 N.J. Super. 358, 376–77, 217 A.2d 631 (App.Div. 1966). Such a clause must be designed to provide actual compensation to a creditor for administrative or other costs incurred as a result of the default. *Stuchin v. Kasirer,* 237 N.J.Super. 604, 568 A.2d 907 (App.Div.1990) *cert. den.* 121 N.J. 660, 583 A.2d 346 (1990).

Furthermore, "courts will deny enforcement to contractual provisions which are penalties". *Id.; Barr & Sons, Inc.,* 90 N.J.Super. at 376–77, 217 A.2d 631; *Westmount Country Club v. Kameny,* 82 N.J.Super. 200, 197 A.2d 379 (App.Div. 1964). As the court stated in *Borden Company, Pioneer Ice Cream Division v. Manley,* 127 N.J.L. 461, 23 A.2d 281 (Sup.Ct. 1942), "[i]f it appears that the parties have provided for an excessive sum in a case where the real damages are certain or readily reducible to certainty by proof, then the sum fixed is deemed a penalty and is not enforceable." *Id.* at 463, 23 A.2d 281.

In *Stuchin,* the court set forth the standard by which default rate interest provisions shall be judged. The court stated: "[i]t must be viewed as a liquidated damage clause, which may properly provide recompense to the lender only for the reasonably estimated cost of the loss of the income or other lost benefit of the bargain." *Id.* 237 N.J.Super. at 613–14, 568 A.2d 907.

In *Tastyeast,* the court declined to enforce a default rate of interest which increased the contract rate from 21% to 30% upon default. The court stated that it failed "to find any direct relation between the increased rate and the anticipated loss which a default might have caused the mortgagee." *Tastyeast, Inc.,* at 882. Additionally, "[b]oth parties knew the increase was intended only to coerce the debtor into a prompt payment upon maturity. As such it was an agreement for a

---

**3.** "Liquidated damages is the sum a party to contract agrees to pay if he breaks some promise and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from breach, is recoverable as agreed if breach occurs." *Westmount Country Club v. Kameny,* 82 N.J.Super. 200, 204, 197 A.2d 379 (1964).

penalty and unenforceable in bankruptcy." 126 F.2d at 882.[4]

In *Feller v. Architects Display Bldgs., Inc.*, 54 N.J.Super. 205, 148 A.2d 634 (App. Div.1959), the court held that an increase from seventeen percent (17%) to approximately thirty-three percent (33%), though not illegal, was unconscionably high and unenforceable because it amounted to a penalty. Since the court deemed the clause a penalty, the increase in the rate of interest was denied. *Id.* at 214, 148 A.2d 634.

In the case at bar, while it is plausible that a three percent (3%) increase upon default bears some relationship to actual administrative expenses incurred by the lender, Ms. Kavanaugh testified that the default rate of interest was designed to induce payment by the mortgagor. This testimony therefore negates this inference. (Transcript pg. 20).

New Jersey does not set a percentage or a dollar amount at which point the determination of penalty is made. Rather, it looks to the essence and intent of the clause in question. Based on New Jersey case law and a clear admission by the RTC that the default rate was designed to induce payment, this Court finds that the RTC's claim for interest at the default rate is an unenforceable penalty.

**B. Under The Bankruptcy Code, The Provision For Default Rate Of Interest Is Unenforceable As A Penalty.**

In general, state law will render default rate interest provisions enforceable unless the increased rate constitutes a penalty. However, when the debtor has filed a petition under Chapter 11, the enforceability of the increased rate is not as clear. "While a default rate may well not constitute a penalty, as between the secured creditor and the debtor, under state law and for state law purposes, that conclusion does not answer the *federal* question of relative distributive rights of creditors in a reorganization proceeding." *In re W.S. Sheppley & Co.*, 62 B.R. 271, 278 (Bankr.N.D.Iowa 1986).

In *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), a pre-Bankruptcy Code case, the Supreme Court disallowed the payment of interest on interest and concluded that where the debtor was insolvent, such a claim ought to be denied on equitable grounds because it penalized lower priority creditors. However, courts distinguished *Vanston* when the debtor was solvent. *Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir.1959) *cert. den.* 361 U.S. 947, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960).

In *In re White*, 88 B.R. 498 (Bkrtcy. D.Mass.1988), the court found that the default rate of forty-eight percent (48%), though not usurious, was an unenforceable penalty designed to coerce the debtor into prompt payment, and was not a reasonable estimate of the creditor's actual damages.

Under both state and federal law, the clause increasing the interest rate after default is an unenforceable penalty, since by the RTC's own admission the clause was meant to coerce prompt payment. *See In re Tastyeast, Inc.*, 126 F.2d 879 (3d Cir. 1942) and *In re White*, 88 B.R. 498 (Bkrtcy. D.Mass.1988).

**2. *The Resolution Trust Company Is Not Entitled To Payment Of A Delinquency Charge For Untimely Payments Since The Provision Is An Unenforceable Penalty.***

Under 11 U.S.C. § 506(b), a secured creditor may recover a delinquency charge where: 1) the creditor is oversecured; 2) the charge is reasonable as a matter of state law; and 3) the debtor has specifically agreed to it. *Mack Financial Corp. v. Ireson*, 53 B.R. 118 (D.C.Va.1985) *aff'd* 789 F.2d 1083 (4th Cir.1986). In this case, reasonableness is the only factor open to debate.

In *Crest Savings and Loan Ass'n v. Mason*, 243 N.J.Super. 646, 581 A.2d 120 (Ch.Div.1990), the court addressed the matter of late charges. There, the mortgagors

---

**4.** In reaching this conclusion, the court based its decision, in part, on the relative inequality of the parties' bargaining positions. *Id.*

defaulted on their mortgage, which contained provisions that provided for late charges in the event of default. Late payment charges, or late charges, are collectible as liquidated damages if there is a provision for them in the mortgage instrument and the charges are compensation to the mortgagee for administrative expenses. *Id.* at 648, 581 A.2d 120. However, where a late charge does not reflect actual compensation to the creditor for the extra administrative expenses in handling the late payment, it will be deemed an unenforceable penalty. *In re L.H.D. Realty Corp.*, 20 B.R. 722, 725 (Bankr.S.D.Ind.1982). *See also Stuchin, supra.*

In addition to bearing a relationship to the amount of actual loss incurred by the creditor, the primary purpose of the clause cannot be to compel prompt payment. *In re Oahu Cabinets, Ltd.*, 12 B.R. 160, 165 (Bkrtcy.D.Haw.1981). Again, Ms. Kavanaugh testified that the 5% late charge was also "intended to coerce performance" by the debtor. (Transcript pgs. 20–21). Accordingly, this Court holds that the contractual provision providing for a late charge of 5% for any monthly interest installment not received within fifteen days is an unenforceable penalty. *See In re Tastyeast, Inc.*, 126 F.2d 879 (3d Cir.1942).[5]

3. *The Resolution Trust Company Is Not Entitled To Receive Payment of Origination Fees.*

 11 U.S.C. § 506(b) requires a twofold test in order for a claim to be considered an allowed secured claim. There must be sufficient value over and above the balance due available to make the payment (i.e. the creditor must be oversecured) *and* it must appear that the charges sought to be enforced arise "under the agreement." Since there is no contractual support for the origination fee in the contract doc-

uments, RTC's claim for $77,300.00 in such fees is denied, as constituting part of its allowed secured claim under § 506(b). This determination is without prejudice to the right of the RTC to assert an unsecured claim.

### CONCLUSION

Based on the foregoing, this Court finds and concludes that the default rate of interest and late charges are not allowable as they constitute penalties. Additionally, since there is no support in the contract for the origination fee, the RTC's claim for $77,300.00 in such fees is be denied, without prejudice, as an unenforceable penalty.

Attorney for the debtor shall submit a form of order within ten (10) days.

---

5. The *Crest* court also noted, as the RTC states, that late charges accruing after the complaint was filed were not necessarily penalties. However, the mortgagee was not entitled to collect such late charges, as the mortgagor's right to make monthly payments ended once the mortgage was accelerated. *Crest,* 243 N.J.Super. at 650, 581 A.2d 120. However, this point is inapplicable here, as it does not appear that the RTC

ever filed a foreclosure action. In fact, in its memorandum of law, the RTC states that "City/RTC has not refused to accept any further payments from Timberline." (RTC's Memorandum of Law in Support of Award of Payment of Default Rate Interest, Late Charges, and Origination Fees Owed by Debtor to City Savings, FSB Upon Default and for Other Relief at 18 (No. 89–05287)).