604 A.2d 165

HARRISON PARK OWNERS, INC., PLAINTIFF–RESPONDENT,
v. ROBERTO DIXON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 3, 1992—Decided March 11, 1992.

Before Judges PETRELLA, R.S. COHEN and KESTIN.

*Reitman, Parsonnet* and *Duggan*, attorneys for appellant
(*William J. Volonte*, on the brief).

*McCarter & English,* attorneys for respondent (*Frank E. Ferruggia,* of counsel; *Frank E. Ferruggia* and *Mark J. Warshauer,* on the brief).

PER CURIAM.

Defendant Roberto Dixon, a unit owner of a co-operative and a shareholder in plaintiff Harrison Park Owners, Inc. (Harrison Park), appeals from the entry of a default judgment against him and the denial of his *R.* 4:50–1 motion to vacate that judgment.[1] He argues on appeal that the Law Division judge erred in failing to vacate the default judgment.

The facts are not complicated. In 1982 Dixon purchased 290 shares of stock which were allocated to and gave him possession of Unit No. 7N at Harrison Park Apartments in East Orange, which he used as his residence. In connection with his stock purchase, Dixon signed a "Proprietary Lease"[2] with Harrison Park under which he "leased" the "apartment" (Unit No. 7N) for a term ending "July 1, 2020 (unless sooner terminated as hereinafter provided)," and subject to the terms contained therein, including payment of rent or "maintenance" each month.

In May 1988, various rooms in Dixon's unit were extensively damaged by water, as was some of his personal property. Apparently, this was not due to any fault of Dixon. A dispute arose between Dixon and Harrison Park and its maintenance service contractor over the repairs. Dixon began to withhold payment of his monthly maintenance charges until repairs were made. He also demanded payment for his damaged personal property.

---

[1] *See Haber v. Haber,* 253 *N.J.Super.* 413, 601 *A.*2d 1199 (App.Div.1992).

[2] We were advised that he purchased his ownership shares for $32,000. The record did not contain a copy of the actual document signed by Dixon, but only a blank and undated form of Proprietary Lease. We requested a copy of the signed document and have now been advised by counsel for Harrison Park that the actual signed lease cannot be located.

Notwithstanding the continuing dispute between the parties, and presumably as a result of Dixon's withholding of monthly maintenance payments, Harrison Park filed a complaint in the Law Division against Dixon on January 18, 1990 for "unpaid rent due and owing by [Dixon] as of the date of this Complaint [of] $6,251.71." The complaint also sought attorney's fees in connection with collection efforts under paragraph 28 of the Proprietary Lease. Paragraph 8 of the complaint said:

Pursuant to paragraph 31 of the Lease, the Corporation has the right to re-enter Unit No. 7N, upon the termination of the Lease and has the further right to remove all persons and property therefrom and to repossess Unit No. 7N.

Thus, the complaint not only demanded a money judgment, but also possession of Unit No. 7N under the lease, attorney's fees, costs of suit and such other relief as the court might deem appropriate.

The summons and complaint were served on Dixon on January 29, 1990. When he received them, he went to the office of an attorney who called the attorneys for Harrison Park. He also went to the management company offices, C & R Management Co. (C & R), to discuss maintenance fee arrears and to straighten out the situation. Apparently, C & R conceded that there was a mistake in the amount Harrison Park claimed Dixon owed. Harrison Park admitted in a February 10, 1990 letter to Dixon that his outstanding balance had been overstated by $1,025 and the balance should be reduced to $5,226.71. That letter also advised Dixon that unless he paid within five days, legal action would proceed. Moreover, it acknowledged the discussions concerning water damage to Dixon's unit and indicated that management was requested to "review the situation and take care of any unfinished work relating to the water damage in [Dixon's] apartment." The letter ended with an expression of hope that the matter would be resolved shortly.

On February 13, 1990, Dixon received a note from C & R that repairs were going to be done on his apartment. On that date Dixon issued two checks to Harrison Park totaling $2,719.58 in partial payment of the outstanding maintenance fees.

However, on the request of the attorneys for Harrison Park, a default was entered against Dixon on March 5, 1990, based on a certification to the effect that defendant had not answered or otherwise moved.[3]

On June 20, 1990, Harrison Park filed a motion for a judgment by default with supporting certifications. On July 6, 1990 a default judgment for $5,468.45 was entered based on the filed papers. The default judgment also granted Harrison Park "possession" of Unit No. 7N; authorized Harrison Park to cancel of record Dixon's 290 shares of stock in Harrison Park; reissue the shares in its own name; sell Dixon's unit to satisfy the judgment; and thereafter enter into a new proprietary lease for the unit and reissue the 290 shares of stock attributable to Unit No. 7N to any new purchaser. Any surplus was to be deposited with the Clerk of the court.[4] On August 8, 1990, the Essex County Sheriff sent Dixon a letter advising him to vacate his unit on or before September 11, 1990. According to Dixon's certification, the letter came while he was on vacation and it was not until he returned in the beginning of September that he was able to respond to it.

A motion by Dixon to vacate the default judgment was filed on or about November 8, 1990, returnable November 30, 1990. According to Dixon's November 8, 1990 certification submitted in connection with his motion to vacate the July 6, 1990 default judgment, certain repairs were made to the apartment in February 1990, but "the patchwork job was incomplete and the damage has once again reappeared." Dixon's certification also stated that after he made the payments to the management

---

[3]Why Dixon did not file an answer to the complaint is not fully explained. This may have been due to confusion with procedures in tenancy matters in the Special Civil Part where answers are not required to be filed and the court sends out confirmation notice of the hearing date.

[4]We are unaware from the record before us whether the shares were canceled and resold and whether there was any surplus or whether any stay was granted.

company he was under the impression that all arrears had been paid and that the complaint had been withdrawn.

A January 7, 1991 certification of Bea Doyle, the property manager of Harrison Park, presumably submitted late and in opposition to the motion to vacate the default judgment, stated that Dixon owed $6,251.71 as of the date the complaint was filed (corrected and reduced to $5,226.71), but ignoring the February 13, 1990 note from C & R that repairs were continuing, asserted that the repairs to Dixon's apartment were completed in November 1988. Doyle conceded that in February 1990 Dixon had resumed making payments, although in an amount less than was due under the Proprietary Lease. The motion had been apparently postponed and was argued on January 11, 1991 when it was denied and an order was entered.

The motion judge was initially under the mistaken impression that the action had originally been brought as a summary dispossess action in the Special Civil Part.[5] He apparently thought the default judgment was entered thereafter in the Law Division.

At the January 11, 1991 oral argument, the judge was told that there was a dispute between the parties and that Dixon had claimed that there was a much lower amount actually owed. It was also pointed out that Dixon had a defense to the claim for maintenance fees based on the damage to his unit and the attempts to get it repaired. The moving papers had also recited these defenses. Although Dixon's attorney did not refer to a *Marini v. Ireland*, 56 *N.J.* 130, 265 *A.*2d 526 (1970),

---

[5]The matter had actually been a Law Division case from inception. Under *Plaza Road Cooperative, Inc. v. Finn*, 201 *N.J.Super.* 174, 175, 492 *A.*2d 1072 (App.Div.1985), it could not have been brought as a summary dispossess action because that case held that the relationship between the co-operative and the individual was "not one of landlord tenant," and as a result, "the court has no jurisdiction to hear plaintiff's summary dispossess action." *Id.* at 181, 492 *A.*2d 1072.

type of defense, essentially that is what was implicated by the claim of water damage.

Harrison Park's attorney attempted to rebut some of the potential meritorious defenses raised, *i.e.*, with respect to the amount due, by going over the checks and a computer print-out. In addition, in spite of the fact that Dixon had been sent the February 13, 1990 letter from Harrison Park's agent with respect to flood damage in the apartment, at the oral argument the attorney for Harrison Park put that damage dispute in the wrong time frame and argued that the assertion of flood damage only came "at this late date by Mr. Dixon" and "at the last minute."

The motion judge acknowledged *Marder v. Realty Construction Co.*, 84 *N.J.Super.* 313, 319, 202 *A.*2d 175 (App.Div.1964), *affirmed o.b.* 43 *N.J.* 508, 205 *A.*2d 744 (1964), where we stated that "the opening of a default judgment should be viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." *See also Olympic Industrial Park v. P.L., Inc.*, 208 *N.J.Super.* 577, 581, 506 *A.*2d 770 (App.Div.1986). *Marder* involved a case where the trial court had reopened a default judgment for possession of lands and mesne profits. However, the motion judge here concluded that Dixon had not shown excusable neglect and refused to vacate the judgment under Rule 4:50–1. The judge did not reach the meritorious defense issue.

Our review of the record and the arguments leads us to conclude that the judge erred in coming to this conclusion. There was ample explanation for the delay that had occurred. *See Olympic Industrial Park v. P.L., Inc., supra.* Dixon certainly cannot be said to have slumbered on his rights. He became involved in negotiations with the co-operative corporation and its managing agent and did have an attorney contact the corporation's attorney. It may well have been perceived from his layperson's point of view that he was not in danger of forfeiting anything important while he continued to advocate

his position that he was entitled to have his unit fully repaired. Moreover, since a defense was raised which in effect embodied arguments of habitability as in *Marini v. Ireland, supra* 56 *N.J.* 130, 265 *A.*2d 526 and *Berezito v. Gambino,* 63 *N.J.* 460, 308 *A.*2d 17 (1973), in a landlord-tenant situation, this could provide sufficient justification for withholding the monthly maintenance charges. As to disputed issues on damage to the unit and the amount Dixon owed, we can only say that a fact hearing would be necessary to determine issues of credibility.

We also note that paragraph numbered 4 of the Proprietary Lease provided for proportional abatement of the rent or maintenance payment where there has been damage to the apartment or unit, other than by fault of the lessee, and that abatement would continue until the apartment has been restored. Here, Dixon certainly had an arguably valid reason for not paying the rent or maintenance charge when due, if a tenant; he certainly had a self-help right conferred by law, *e.g.,* the right under *Marini v. Ireland, supra,* to withhold rent, as well as whatever right to withhold payments he had under the "Proprietary Lease."

We did comment in *Plaza Road Co Op, Inc. v. Finn, supra* 201 *N.J.Super.* at 181, 492 *A.*2d 1072, that a "cooperative is a unique form of property ownership and the relationship between the association and a cooperator-shareholder is not that of landlord and tenant for the purpose of a summary dispossess action." Here, however, the corporation relies on the tenancy-type provisions in the Proprietary Lease when it seeks more than just money damages, but also ejectment or "possession" [6] which it sought essentially as a landlord against its tenant. It is thus equitable to treat the water damage claim as a potential habitability defense, and to consider it and the claim of payment as meritorious defenses which require a hearing.

---

[6] It is not clear to us why a judgment for money damages would not have been adequate with subsequent execution on that judgment. This would minimize the potential for forfeitures, which are, of course, disfavored.

Recent cases and statutory enactments tend to blur the distinction between co-operatives and condominiums. *See Presten v. Sailer,* 225 *N.J.Super.* 178, 542 *A.*2d 7 (App.Div.1988); *Plaza Road Co Op, Inc. v. Finn,* 201 *N.J.Super.* 174, 492 *A.*2d 1072 (App.Div.1985); *N.J.S.A.* 46:8A–1 *et seq.; N.J.S.A.* 46:8D–1 *et seq.; N.J.S.A.* 2A:18–61.1 and 61.2. We need not in this appeal explore further whether, and under what circumstances, a co-operative corporation may obtain ejectment of its shareholder, or possession of a co-operative unit for nonpayment of maintenance charges, particularly where the dollar amount in dispute is low in proportion to the proper value of the unit. It may be argued that the owner retaking possession for minor breaches or disagreements is akin to a disfavored forfeiture, notwithstanding the available remedies in the "Proprietary Lease." Obtaining possession of a unit from a shareholder because of a dispute over a relatively small amount may be a rather harsh remedy when a money judgment and a lien, with the usual collection process, might well serve as an alternate and more equitable approach.

In summary, the record before us clearly establishes that Dixon has shown excusable neglect under the circumstances and that he has meritorious defenses. *Marder, supra,* (84 *N.J.Super.* at 318, 202 *A.*2d 175). The judge's conclusion to the contrary was plainly mistaken and an abuse of discretion. *See Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974); *Fagliarone v. Tp. of North Bergen,* 78 *N.J.Super.* 154, 155, 188 *A.*2d 43 (App.Div.1963). *See Stuchin v. Kasirer,* 237 *N.J.Super.* 604, 609, 568 *A.*2d 907 (App.Div.1990); *Arrow Manufacturing Co., Inc. v. Levinson,* 231 *N.J.Super.* 527, 534, 555 *A.*2d 1165 (App.Div.1989), and *Broder Credit & Collection Service v. Burton,* 193 *N.J.Super.* 474, 478, 475 *A.*2d 52 (App.Div.1984).

Accordingly, we reverse the order denying the motion to vacate the default, and direct that the default be vacated and the matter restored to the trial calendar. Dixon shall have 15

days from the date of receipt of our decision to file a responsive pleading to the complaint.