**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2387-19

TC CAPITAL GROUP, LLC,

    Plaintiff-Appellant,

v.

AMER JADALLAH,

    Defendant-Respondent.

_____

Submitted February 1, 2021 – Decided July 1, 2021

Before Judges Hoffman, Suter, and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-0003-18.

Offit Kurman, PA, attorney for appellant (Umar A. Sheikh, on the brief).

Respondent has not filed a brief.

PER CURIAM

After a non-jury damages trial, plaintiff TC Capital Group, LLC (TC Capital) appeals from a judgment in its favor on a promissory note in the amount

of $15,094.29. TC Capital's sole contention before us is that the trial court erred by denying imposition of an enhanced default interest rate of 25% on unpaid principal as part of its damages award. We affirm for the reasons set forth below.

I.

Defendant Amer Jadallah borrowed the principal sum of $25,000 from Shihab Kuran, signing a promissory note dated April 21, 2013, agreeing to repay the promissory note with interest. Jadallah was a barber and Kuran was his customer. Kuran assigned the note to TC Capital via allonge endorsement dated June 3, 2017. TC Capital was solely owned by Jinan Qutub, Kuran's wife. The note included the following salient terms: (1) Jadallah was to make monthly interest payments of approximately $520 for thirteen months ending on May 21, 2014; (2) Jadallah was to pay the $25,000 principal in its entirety by May 21, 2014; (3) an interest rate of 25% per annum would accrue on any unpaid principal balance due and owing after May 21, 2014; and (4) late charges and counsel fees would accrue after May 21, 2014 as well.

Jadallah defaulted and TC Capital filed suit, eventually moving for summary judgment on the note. Jadallah filed a cross-motion for summary judgment dismissing the complaint, arguing that the 25% interest rate was

A-2387-19

usurious under N.J.S.A. 31:1-1(a) and represented an impermissible penalty for breach of contract, among other grounds. On August 22, 2019, the motion judge granted summary judgment to TC Capital on liability. The motion judge denied summary judgment on damages, finding factual disputes in the record regarding what Jadallah paid. Finally, the motion judge denied Jadallah's cross-motion seeking dismissal, finding the record insufficient to determine whether N.J.S.A. 31:1-1(a) applied to the transaction. The statement of reasons appended to the judge's order contained no finding as to Jadallah's penalty argument.

A different judge conducted a bench trial on damages on September 9, 2019. Two witnesses testified, Qutub and Jadallah. The trial judge made findings, including that Jadallah paid $12,499.92 to Kuran. TC Capital sought 25% interest on the unpaid principal balance, citing the terms of the note. The judge rejected TC Capital's damages claim as it related to post-default interest, finding N.J.S.A 31:1-1(a) barred it completely. After crediting Jadallah's payments toward principal consistent with N.J.S.A. 31:1-3, the trial judge entered a final order compelling Jadallah to pay TC Capital $15,094.29, including counsel fees and late charges.[1]

---

[1] N.J.S.A. 31:1-3 reads as follows:

TC Capital does not challenge the trial judge's application of N.J.S.A. 31:1-1(a) to bar interest accruing prior to Jadallah's default. TC Capital's sole issue on appeal is whether the trial judge erred by denying imposition of a 25% interest rate on the outstanding principal balance after Jadallah's default.

## II.

Our standard of review following a bench trial is well-known.

> Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review: "we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]"

---

> In all actions to enforce any note, bill, bond, mortgage, contract, covenant, conveyance, or assurance, for the payment or delivery of any money, wares, merchandise, goods, or chattels lent, and on which a higher rate of interest shall be reserved or taken than was or is allowed by the law of the place where the contract was made or is to be performed, the amount or value actually lent, without interest or costs of the action, may be recovered, and no more. If any premium or illegal interest shall have been paid to the lender, the sum or sums so paid shall be deducted from the amount that may be due as aforesaid, and recovery had for the balance only.

4

> [Seidman v. Clifton Sav. Bank, SLA, 205 N.J. 150,
> 169 (2011) (alteration in original) (quoting In re Trust
> Created By Agreement Dated Dec. 20, 1961, 194 N.J.
> 276, 284 (2008)).]

In reviewing the judge's findings, "[w]e do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (alteration in original) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). However, we owe no deference to the judge's interpretation of the law and the legal consequences that flow from established facts. Manalapan Realty LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citing State v. Brown, 118 N.J. 595, 604 (1990)).

N.J.S.A. 31:1-1 to -9 is entitled, "Usury and Effect Thereof." Section 1-1(a) reads as follows:

> Except as herein and otherwise provided by law, no person shall, upon contract, take, directly or indirectly for loan of any money, wares, merchandise, goods and chattels, above the value of $6.00 for the forbearance of $100.00 for a year, or when there is a written contract specifying a rate of interest, no person shall take above the value of $16.00 for the forbearance of $100.00 for a year.
>
> [N.J.S.A. 31:1-1(a).]

At the damages trial, the judge concluded as a matter of law that the parties' agreed upon 25% interest rate violated N.J.S.A. 31:1-1(a). Having eliminated the interest calculation from the damage award, the judge then looked to N.J.S.A. 31:1-3, applying Jadallah's payment of $12,499.92 to the principal amount due of $25,000.[2]

TC Capital argues that the trial judge mistakenly applied the statute, and that the 25% interest clause is permissible under New Jersey law so long as the interest is charged to Jadallah from the date of default. TC Capital relies primarily upon two published cases, Stuchin v. Kasirer, 237 N.J. Super. 604 (App. Div. 1990), and Ramsey v. Morrison, 39 N.J.L. 591 (Sup. Ct. 1877). It argues these cases stand for the principle that promissory notes with "excessive" interest rates which may violate usury laws are not considered usurious after default of the borrower. See Stuchin, 237 N.J. Super. at 611 (quoting Ramsey, 39 N.J.L. at 593) ("If the gain to the lender, beyond the legal rate of interest, is, by the contract, made dependent on the will of the borrower, as where he may discharge himself from it by the punctual payment of the principal, the contract is not usurious."). The rationale behind the principle is that the larger post-default payment serves as an incentive to the borrower to make smaller payments

---

[2] The trial judge found the date of Jadallah's default to be May 21, 2014.

A-2387-19

on time.  9 Williston on Contracts § 20:33 (4th ed. 2011).  Applied in a vacuum, TC Capital's argument places the disputed promissory note outside the reach of the usury statute and would compel imposition of the 25% interest rate on Jadallah' s unpaid principal balance from the date of default.  Our analysis does not end here, however.

Stuchin involved a $1,650,000 commercial mortgage loan agreement with a clause escalating the interest rate from 9% to 24% upon the borrower's default. While we found the size of the commercial loan in that case exempted it from the usury statute,[3] we concluded that had it applied, the 24% rate would have been permissible after the borrower's default, had the analysis stopped at that point.  Id. at 610-11.  However, a complete reading of our holding in Stuchin reveals that a borrower's loan default status is not the end of the inquiry when examining enhanced interest rates in a promissory note.

When presented with default terms imposing a higher interest rate, we have examined such terms through an equitable lens.  "It is the general rule in the case of a corporate borrower that it is not illegal to provide for a higher rate of interest than the legal rate after maturity, but if such rate is unconscionably

---

[3]  "N.J.S.A. 31:1-1(e)(1) provides an exemption for loans 'in the amount of $50,000 or more . . . .'"  Stuchin, 237 N.J. Super. at 610.

high it will be unenforceable because it amounts to a penalty." Id. at 612 (citations omitted) (citing Feller v. Architects Display Bldgs., Inc., 54 N.J. Super. 205, 214 (App. Div. 1959)). Applying this rule, we next determine whether the challenged interest rate is a penalty. We review precedent to accomplish this step.

In Stuchin, we reversed the trial court, which originally found the post-default 15% interest increase enforceable, then remanded the case for reconsideration of whether the increase was intended to be a penalty. Id. at 614. Feller involved a mortgage loan for $50,000 payable at 17% which vaulted to 32.87% on the unpaid balance after the borrower's default. 54 N.J. Super. at 214. We held the increase and resultant high interest rate to be an unconscionable penalty. Id. at 213.

In Spiotta v. William H. Wilson, Inc., 72 N.J. Super. 572 (App. Div.1962) the borrower agreed to a pre-default interest rate of 30.18%. Spiotta, 72 N.J. Super. at 579. Upon default he was exposed to an effective post-default interest rate of 38.76%. Ibid. We found "the interest rate advanced over eight points the moment default was declared" and held the rate "unconscionable and unenforceable." Ibid.

8

Metlife Cap. Fin. Corp. v. Wash. Ave. Assocs. L.P., 159 N.J. 484 (1999), not cited in TC Capital's brief, is consistent with these holdings. In that case, Washington Ave. borrowed $1.5 million from Metlife Capital Corporation. Id. at 488. The non-default interest rate was 9.55%. Id. at 489. However, the agreement stated that if Washington Ave. defaulted, the default rate was "the greater of five percent (5%) per annum in excess of the 'prime rate' as designated by Chase Manhattan Bank, N.A. . . . or fifteen percent (15%) per annum; provided, however, that such Default Rate shall not exceed the maximum rate allowable under law." Ibid. The trial court found that a 12.55% default rate established under the contract formula was reasonably related to actual damages. Id. at 491. After commenting that a "default provision providing for an unreasonable increase" is "unenforceable as a penalty" and acknowledging the punitive size of the rate increases found in Stuchin, Spiotta, and Feller, the MetLife Court held the 3% post-default increase did not constitute a penalty. Id. at 501.

We have reviewed the record to determine if the 25% interest in the note was unconscionable and unenforceable as a penalty. We conclude that it was. The 25% interest rate was imposed on the "unpaid principal balance." The 25% rate was unreasonable when compared to the 3% increase in Metlife, and it was

9

more in line with the higher rates contemplated in Feller, Spiotta, and Stuchin. "A default provision providing for an unreasonable increase in the contract interest rate is unenforceable as a penalty. [Our courts] have invalidated enhanced default rates if their size suggests a punitive intent." Metlife, 159 N.J. at 501 (citing Stuchin, 237 N.J. Super. at 612).[4] No proofs in the trial record support a reasonable relationship between the default rate charged to Jadallah and any ascertainable losses anticipated by TC Capital in the event of a breach. Metlife, 159 N.J. at 501. "Parties to a contract may not fix a penalty for its breach. . . . [S]uch a contract is unlawful." Westmark Com. Mortg. Fund IV v. Teenform Assocs., 362 N.J. Super. 336, 340 (App. Div. 2003) (citing Westmount Country Club v. Kameny, 82 N.J. Super. 200, 205 (App. Div. 1964)).

We find the 25% interest rate imposed on Jadallah's unpaid principal balance was unconscionable and unenforceable as an illegal penalty, consistent with Metlife and Stuchin.

Any arguments not addressed here lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

---

[4] We note our state's current Department of Banking and Insurance regulations specify a 16% maximum interest rate for written loan agreements. N.J.A.C. 31:1-1.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2387-19