Essex County Court of Common Pleas.

WILLIAM C. KIRSCHLER, PLAINTIFF, v. OTTO H. AL-
BANESIUS AND LITTLE THEATRE, INCORPORATED, A
CORPORATION, DEFENDANTS.

Decided April 16, 1935.

For the plaintiff, *Kalisch & Kalisch*.

For the defendants, *Levy, Fenster & McCloskey*.

HARTSHORNE, C. P. J.   The question here is, whether or
not the Court of Common Pleas has jurisdiction to try cases
where the right to possession of land is in issue, even where
such right is for less than a freehold, as, for instance, a lease-
hold.

The facts have been stipulated, and, in brief, are, that
defendant Albanesius was the owner of the fee of the prem-
ises in question on Broad street, Newark. Albanesius first
leased the premises to Fine Arts Theatre, Incorporated.
Thereafter a receiver for such company was appointed. Ten
days later Albanesius leased the same premises to defendant
Little Theatre, Incorporated. Shortly thereafter the above
receiver sold the first of the above leases to plaintiff, Kirsch-
ler. Defendant Little Theatre, Incorporated, otherwise
known as Cinema Company, Incorporated, is actually in pos-
session of the premises, while plaintiff Kirschler has never
been in possession, but seeks same by this suit. The rights
of the respective parties are, therefore, to be determined by
the terms of the leases and the effect thereon of the above
receiver's sale. Upon this state of facts, it is moved to dis-
miss this action in ejectment for lack of jurisdiction in the
Common Pleas Court. This jurisdictional question is raised

by the terms of the Ejectment act, and by the statute governing the general jurisdiction of the Common Pleas Court. The latter provides "the Court of Common Pleas shall be a court of record, with general jurisdiction over all suits and actions of a civil nature at law, irrespective of the amount in controversy, *save only suits and actions wherein the title to real estate is in question * * *."* Pamph. L. 1900, p. 322; 2 Comp. Stat., tit. "Courts," p. 1725, § 94.

The Ejectment act provides that a bill of particulars of either party's "claim or title to the premises in question" may be demanded. This indicates that ejectment lies to assert any right to possession, whether based on a full freehold or not; *i. e.,* it covers a leasehold, as in the case at bar. This is quite in accord with the ancient common law character of ejectment. As was stated by Chief Justice Kirkpatrick, as far back as 1822, in regard to the basis of plaintiff's claim in ejectment:

"All that he had to show, in order to maintain his suit, was the possession of himself or his ancestor, and this might be overcome by the defendant showing an older and a better possession; for it never was pretended that the defendant's must be such a possession as established the ultimate right. * * * The action of ejectment * * * was not originally devised as a remedy for injuries done to real estate, that is, to estates of freehold in lands, but as a remedy for injuries done to chattels real, such as terms for years which were considered as mere chattel interests." *Den* v. *Morris,* 7 *N. J. L.* 6.

The Ejectment act further gives the justices of the Supreme Court, at least as to mesne profits, the right to regulate the proceedings "in the Circuit Court, as well as in the Supreme Court." 2 *Comp. Stat., tit. "Ejectment,"* p. 2063, § 45. While this does not clearly exclude the Common Pleas from jurisdiction, particularly as to the main ejectment action, exclusive of that for mesne profits, such would be at least a possible inference. However, since same is but an inference, and not of indubitable clarity, such a lack of judicial jurisdiction should not be rested solely thereon, particularly in view of the fact that the statute governing the general juris-

diction of the court was enacted later than the Ejectment act, and so might well constitute, if inconsistent, an implied modification or repealer.

It is argued that "the title to real estate," referred to in the exception to the jurisdiction of the pleas, *supra,* means solely full freehold title, and does not include a mere right or claim to possession for less than freehold, such as a leasehold or term for years. If this is correct, then this act may well constitute an implied repealer, at least as to ejectments involving less than the freehold, as here, of the inference arising from the Ejectment act, if such inference is, indeed, proper. Since no decision has been found dealing with such present enactment in this regard, this question, as to the meaning of these words, "title to real estate," in this statute calls for a consideration, not only of the general meaning of such term, but of the preceding similar enactments by the legislature as to the jurisdiction of the Court of Common Pleas, reaching back, as they do, to the earliest colonial times.

The first courts in the colonies of East and West Jersey were established in 1667 in Monmouth county. In 1675 the provincial assembly created the first county courts, called the Sessions, to try both civil and criminal cases, same then being held by the justices of the peace, who also, apparently, held the local courts. In 1704 Lord Cornbury, empowered by the crown, established, by ordinance, a more general legal system, providing for the creation of courts for the trial of small causes, with appeal to the Court of Sessions, such ordinance further providing for the establishment of a Court of Common Pleas, to be held immediately following the session of the Sessions, and to be held, apparently, by the same magistrates. *Schalk* v. *Wrightson,* 58 *N. J. L.* 50; 4 *N. J. Archives* 166; 32 *Atl. Rep.* 820. While some of the judges of the Common Pleas were lawyers, many, if not most, of the Common Pleas judges were laymen, who still continued to hold court even as late as 1896. *Gray* v. *Bastedo,* 46 *N. J. L.* 453, 459.

The lay judges were entitled "Judges;" the law judges "President Judges"—the origin of the present term. So wedded were our forefathers to the theory of lay judges, that two lay judges were originally required to ride the circuits

and assist the chief justice in holding the Supreme Court on circuit. But by *Pamph. L.* 1896, *ch.* 102, *p.* 149, all lay judges of the Court of Common Pleas were abolished.

This practical situation, in which the colonists selected their own lay judges, unskilled in the law, was doubtless the reason why it was expressly provided, as to the Court of Common Pleas, in Lord Cornbury's ordinance of 1704, which first created that court, that though such court should be one of general jurisdiction, an appeal would lie from its decision, or a cause lawfully before it might be removed by a prerogative writ to the Supreme Court in "any action or suit wherein the right or title of, in, or to any land or anything relating thereto, shall be brought into dispute or upon tryal." This, of course, did not deprive the Common Pleas of jurisdiction over such causes, but gave either an appeal from its decision in that regard, or the right to the parties to remove such cause, at the discretion of the Supreme Court, before such decision. But the same ordinance inconsistently provided, as to the power of the Supreme Court to issue its prerogative writ to the Sessions and the Pleas, that same should issue, in actions of this character, among other conditions, only where "the right or title of any freehold" was concerned. The next court ordinance, of 1714, apparently recognized this inconsistency, for it provided for such removal in cases, among others, where there was concerned "the right or title of any lands, tenements, and hereditaments whatsoever." *Provincial Courts of New Jersey,* Field, Ordinance of Robert Hunter, Appendix D, page 267. This status continued until 1723, when, by the ordinance of George II, it was provided that the Common Pleas should have jurisdiction to hear "all suits * * * (causes wherein the right or title of any lands, tenements, and hereditaments, is in anywise concerned, excepted"). Book C of Commissions, page 57, 1 *Hal. Ch.* (6 *N. J. L.*) Appendix A. This regulation of the jurisdiction of the Common Pleas continued on down through the years until the enactment of the above statute of 1900, at present in force. For the intervening state constitutions of 1776 and 1844 did not expressly set forth the jurisdiction of such court, though such court was there referred to. but

did provide that "the several courts of law and equity * * * shall continue, with the like powers and jurisdiction as if this constitution had not been adopted." Constitution of 1844, article 10, section 1.

Clearly, the Common Pleas, from 1723 to 1900, did not have jurisdiction of causes where either freeholds or claims for less than a freehold were involved. This is both because the above ordinance of George II excepts the court's jurisdiction to causes concerning a "right or title of lands," and because it includes in such exception "tenements" as well as lands. The word "tenements" means property held by a tenant, including rents and profits *a prendre,* and when used alone, without other circumstances, has never been construed to pass a fee. 2 *Bouvier; Rawles* (*3d ed.*) 3257; *Wright* v. *Page,* 10 *Wheat.* 204; 1 *B. & Ad.* 161. It was upon the basis of this early restriction upon the court's jurisdiction that the case of *Collins* v. *Keller,* 58 *N. J. L.* 429; 34 *Atl. Rep.* 753, was decided, though it does not appear in such case whether or not a claim for less than a freehold was involved.

The only other cases found in which the jurisdiction of the Common Pleas was involved in this regard are those of *Messler* v. *Fleming,* 41 *N. J. L.* 108, and *Jeffrey* v. *Owen, Ibid.* 260. Both these cases, however, originated in a Justice's Court, and were therefrom appealed to the Common Pleas and removed, on *certiorari,* from the Pleas to the Supreme Court. Thus, while the Supreme Court in such cases concludes that the Pleas, as well as the Justice's Court, was without jurisdiction, it reached such conclusion, not upon the basis of the statute limiting the jurisdiction of the Pleas, but upon the basis of the similar statute limiting the jurisdiction of the Justice's Court. This latter statute then provided that the jurisdiction of the Justice's Court "shall not extend to any action wherein the title to lands, tenements, or hereditaments, or other real estate, shall or may in anywise come in question." It further provided that when a defendant, as a justification, pleaded title in himself or another under whom he acted or entered (Revision of 1877, page 538, section 1), the suit should be terminated in

the Justice's Court and initiated elsewhere. The great similarity between these limitations on the jurisdiction of the Justice's Court and the limitation previous to 1900 on the jurisdiction of the Common Pleas Court, is noteworthy. The only difference between them is that in the Common Pleas statute the words are "right or title," while in the Justice's Court act the word "title" alone is used, and, further, that in the Justice's Court act the words "or other real estate" are added. Since the words "or other real estate" clearly can add little to the all-inclusive term "lands, tenements and hereditaments," the question is whether the use of the word "title" alone in the Justice's Court act shows that such title has reference solely to freeholds.

A series of decisions of the courts of this state uniformly show that it does not, but that, on the contrary, it covers all claims of any quality to the possession of land, in so far as such claims to possession are distinguished from the actual physical possession of the land. In the Messler case, above, the court cites with approval from *Hill* v. *Carter*, 16 *N. J. L.* 87; 1 *Harr.* 87, and a series of other cases as follows:

"The effect of these provisions is clearly stated by Mr. Justice Ryerson, in *Hill* v. *Carter*, 1 *Harr.* 87: 'The justice may try the fact of possession. This is the proper limit of his jurisdiction. He cannot ordinarily inquire into any matter of title to lands, involving the execution, validity or construction of deeds, mortgages, wills, judgments or decrees. They very frequently call for the deepest learning of the law. By title and claim, then, our legislature must have intended to distinguish between such title as a possession alone gives, and title by documents, or other matters conferring title, independent of a present possession such as consanguinity, descent, endorsement and curtesy.'

"With equal precision the rule is stated by Chief Justice Green in *Campfield* v. *Johnson*, 21 *N. J. L.* 83 (1 *Zab.* 85): 'Title is generally applied to signify the right to land and real effects. It is the right of possession, or of property in lands as distinguished from the actual possession, and it is precisely in this sense that the word appears to have been used in the statute now under consideration. The right to

try actions concerning real estate, involving the mere fact of possession is vested in the court for the trial of small causes. But the statute excludes from its jurisdiction all cases where, either in support of the action or in maintenance of the defense, any right or title is involved other than the naked fact of possession."

In the above case of *Jeffrey* v. *Owen, supra,* the court says:

"The jurisdiction of a justice of the peace extends no further than to enable him to try the fact of possession—*pedis possessio*. He has no jurisdiction to inquire into the title to lands, or into the right of possession. He can only take cognizance of possession as a question of fact. Where the plaintiff can maintain his right to sue in trespass, by proof of actual possession, which the justice may determine upon evidence of facts, without any inquiry into title, the action is cognizable in a Justice's Court; but if the possession be merely constructive, and can be shown only by proof of title, the justice has no jurisdiction. If documentary or other evidence relating to title be relied on, which the justice cannot adjudicate upon, another tribunal must be resorted to. *Gregory* v. *Kanouse,* 11 *N. J. L.* 62 (6 *Halst.* 62) ; *Hill* v. *Carter, supra; Campfield* v. *Johnson, supra; Dickerson* v. *Wadsworth,* 33 *N. J. L.* 357 (4 *Vr.* 357)."

Subsequently, this limitation upon the jurisdiction of the Justice's Court was changed in mere verbiage to except actions "wherein the title to lands shall come in question." *Pamph. L.* 1903, *p.* 251; *Pamph. L.* 1923, *ch.* 175, *p.* 461. But the word "title" was still used alone. This clear continuous construction of the word "title" as it affects the jurisdiction of the Justice's Court, seems practically dispositive of the construction to be placed upon the same word "title" as it appears in the 1900 act, limiting the jurisdiction of the Common Pleas Court. 2 *Comp. Stat., tit. "Courts," p.* 1725, § 94, *supra.* Not only does the Justice's Court act always use the sole word "title," but the original act, as thus construed, uses the cumulative word "real estate" exactly as does the present Common Pleas act. It was doubtless in view of this settled construction of such terms that the legislature used the same terms in 1900, relying upon such construction, in

limiting the jurisdiction of the Common Pleas. *Fritts* v. *Kuhl*, 51 *N. J. L.* 191, 199; 17 *Atl. Rep.* 102.

The very fact that appeals from the Justice's Court ordinarily are to the Common Pleas (3 *Comp. Stat., tit. "Justice's Court," p.* 3004, § 80), but that, wherever the defendant pleads title to lands as a justification, the suit thereon must be brought either in the Supreme Court or the Circuit Court, is further evidence of such legislative intention, since the word "title" in such section of the Justice's Court act (section 26) must obviously have the same construction that it has in section 1 of such act, limiting the general jurisdiction of the Justice's Court.

Returning, then, to a consideration of the Ejectment act, we find that such act, passed in 1877, fits nicely into the then legislative scheme, to wit, that ejectment lies for any claim whatever to the possession of lands, other than that based on actual possession, and lies, not in the Common Pleas, but in the Supreme and Circuit Courts. 2 *Comp. Stat., p.* 2053, §§ 25, 45.

Plaintiff's reliance to the contrary, on *Connolly* v. *Donohue*, 35 *N. J. L. J.* 174; *Hankinson* v. *Baird*, 6 *N. J. L.* 130; *Allara* v. *Stevens*, 104 *Id.* 240; 141 *Atl. Rep.* 668, seems ill founded, for in the Connolly case there was no issue as to the paper title, its existence being admitted. As to the Hankinson case, there is either a misprint or it is overruled by *Collins* v. *Keller, supra*. As to the Allara case, the question here was in nowise in issue.

Further interesting contemporary legislative action along the same line is evidenced by the restrictions upon the jurisdiction of the District Courts. By the original District Court act, there was excepted from the jurisdiction of such court "any action wherein the title to any lands and real estate shall come in question." *Pamph. L.* 1898, *ch.* 228, *p.* 556, § 30. The act further provided that where the defendant pleaded title in himself, or one under whom he took, the action would have to proceed in the Supreme or Circuit Courts. These provisions are substantially identical with those as to the jurisdiction of the Justice's Court, as noted above. But in 1910, subsequent to the enactment of the present

limitation upon the jurisdiction of the Common Pleas, the legislature freed the District Courts from the general limitation above, upon their jurisdiction over actions wherein the title to lands might come in question (*Pamph. L.* 1910, *p.* 228; 2 *Comp. Stat., p.* 1962, § 30), though the legislature did not change the limitation, where the defendant pleaded title in himself or another under whom he acted, as justification.

The result is, that while the legislature has still prevented the District Court from taking jurisdiction of actions of ejectment, or for waste, where the defense is that the lands belong to the defendant, or the one under whom he acted, it has given the District Court jurisdiction of other actions where the right to the possession of lands may be an incidental issue. For instance, the District Court would now have jurisdiction of a case of trespass by A against B, where B's answer was that the lands belonged to C, a third party as to both. But in thus enlarging the jurisdiction of the District Court, the legislature obviously overlooked the fact that it had left the Common Pleas, a court of general and not limited jurisdiction, as is the District Court, entirely without jurisdiction in all cases where any claims of any quality to lands, other than those based on actual possession, were concerned, even where such issues were incidental.

As shown above, the reason for this limitation upon the jurisdiction of the Pleas was obviously the fact that the Pleas were originally held largely by lay judges. These lay judges have been abolished for years. The reason for such jurisdictional limitation is, therefore, gone. The legislature has itself recognized, even as to a court of limited jurisdiction, that, there being no lay judges in such court, its original limitation upon the jurisdiction of such court should be largely removed. Clearly, the present archaic limitation upon the jurisdiction of the Common Pleas, a court, otherwise, of general jurisdiction, should be drawn to the attention of the legislature.

But, since such jurisdictional limitation still exists, the motion of the defendant, to dismiss the above cause for lack of jurisdiction, is granted.