OPINION OF THE COURT
Norman H. Shilling, J.
This proceeding is before the Housing Court as a motion brought by order to show cause to vacate a default judgment granted to petitioner, Earl W. Jimerson Housing Co., Inc., a limited-profit co-operative housing corporation, organized under the provisions of article 2 of the Private Housing Finance Law. Respondent resides in Apartment 12F in petitioner’s multi-unit co-operative housing development pursuant to the terms of an occupancy agreement executed by him and the petitioner.
Petitioner (co-operative) instituted summary nonpayment proceedings against the respondent (co-operator) to regain possession of the apartment, and a default judgment for possession was awarded in its favor. Respondent now moves to vacate that judgment, alleging, inter alia, that he tendered all payments claimed due in a timely manner, but that these payments were refused acceptance by the co-operative.
The court finds, however, that the crucial question to be determined in this case is whether the remedy of a summary nonpayment proceeding is available to the parties herein, to wit, whether this court has the requisite subject matter jurisdiction to entertain a summary proceeding between a co-operative corporation and its co-operator.
Summary proceedings, as first authorized by statute in New York State, were designed as a substitute remedy for the common-law action in ejectment, which had become "expensive and dilatory [amounting in many cases] to a denial of justice.” (Reich v Cochran, 201 NY 450, 453-454.) Although the present scope of the summary proceeding has been considerably enlarged to include parties other than landlords and tenants, it remains an exclusively statutory remedy, in derogation of the common law. As such, it must be strictly construed. (Blozevich v Tasber, 116 NYS2d 801; Goldman Bros, v Forester, 62 Misc 2d 812.) If a petitioner in a summary *565 proceeding cannot fit her situation into one of the categories enumerated in the Real Property Actions and Proceedings Law, she must be relegated to her action in ejectment. (North Shore Motor Lodge Corp. v Land, 68 Misc 2d 87.) The right to maintain summary proceedings must be conferred by statute. Parties to a lease or occupancy agreement cannot, by agreement, confer such right nor can it be granted by consent. (14 Carmody-Wait 2d, NY Prac, § 90:9): "The law, and not the consent of parties confers jurisdiction; and that rule could have no practical force, if consent, given in whatever form, could preclude inquiry as to the lawfulness of the jurisdiction.” (Beach v Nixon, 9 NY 35, 37.)
Co-operative and co-operator are not in themselves specifically listed in the Real Property Actions and Proceedings Law as proper parties to a summary proceeding. Further, the relationship of co-operative corporation and co-operator is not that of landlord and tenant, regardless of any provision of the occupancy agreement attempting to consensually define it as such.
The co-operative ownership plan is sui generis. "It is a vehicle for the common ownership of property; in this instance to enable the occupants, the stockholders of the cooperative, to own, manage and operate residential apartments without anyone profiting therefrom.” (Northridge Co-op. Section No. 1 v 32nd Ave. Constr. Corp., 207 Misc 164, 168, mod on other grounds 286 App Div 422, affd 2 NY2d 514.)
The contract between the co-operative and co-operator is generally comprised of several components, the corporate chapter and by-laws, the shares of stock, representing the shareholder-co-operator’s equity in the corporation, the purchase of which entitles the co-operator to an occupancy agreement. The several components, read together, define the "cooperative interest”, or that bundle of rights, privileges, and obligations that determine the relationship between the parties thereto.
The confusion as to what, in terms of the law of property, the nature of the co-operative interest is arises from the fact that the lease and the shares of stock are in themselves personal property, although, in purchasing the same, the owner may be more interested in his occupation and possession of the real property to which they apply. "While there can be little doubt that a proprietary lease is not an ownership document of the status of a deed, it has been stated that *566 in terms of financial import, the proprietary lease 'gives rights equivalent in economic beneñt to outright ownerhsip’ of the property which the lease describes. If the lease does provide rights equivalent to ownership of the cooperative apartment, it must necessarily place the cooperator in a more favored position than a mere lessee.” (Kratovil, Real Estate Law [5th ed], § 549, cited in Rohan and Reskin, Cooperative Housing, § 2.01 [5], p 2-12.7.) In Curtis v Le May (186 Misc 853, 856), the court held that, for purposes of instituting a summary proceeding to evict a former tenant, the petitioner, holder of such an occupancy agreement, is "more of an owner-lessee than [a] mere lessee”. In Matter of Lacaille v Feldman (44 Misc 2d 370, 384), the court found that the co-operator’s interest was "in the nature of a quasi-real property interest”.
Attempts to classify the nature of the co-operative interest have centered their analysis on one or more components of that interest depending on the policy considerations to be served. Thus, for purposes of estate distribution, the co-operator’s interest is viewed as personalty. (Matter of Miller, 205 Misc 770.) For purposes of Federal income tax deductions, it is viewed as realty (Internal Revenue Code [US Code, tit 26, § 216]), although for purposes of determining damages for breach of contract of sale, shares of stock and lease were deemed "goods” within the meaning of article 2 of the Uniform Commercial Code. (Silverman v Alcoa Plaza Assoc., 37 AD2d 166.) This definition by " 'pigeonholing,’ a process of attaching labels * * * and then reasoning with the agreed-upon classification serving as a major premise” has further distorted and confused the analysis of the nature of the cooperative interest. (Rohan, Cooperative Housing: An Appraisal of Residential Controls and Enforcement Procedures, 18 Stan L Rev 1323, 1337.)
The realty-personalty dichotomy of our legal system notwithstanding, this court finds that the co-operative ownership plan is a unique form of property ownership, one whose hybrid qualities should be recognized by a policy-oriented approach, rather than by a rigid attempt to fit into existing legal pigeonholes. The relationship of co-operative and co-operator cannot be blithely subsumed under the general category of landlord and tenant. While the proper forum for resolving the confusion regarding the co-operative interest may be legislative, "(t)he futile requirement that the judiciary somehow pound square pegs into round holes may act to prevent the rational development of property law where new classifica *567 tions are involved.” (Rohan and Reskin, Cooperative Housing, § 201. [5], p 2-2.15.)
With regard to summary proceedings, the co-operative as holder of legal title to the premises has been unquestioningly viewed as landlord. (Parenthetically, nowhere in article 7 of the Real Property Actions and Proceedings Law is the term "landlord” defined.) However, the co-operator in turn has been held to be a "landlord” entitled to bring summary proceedings to evict a holdover lessee. (Curtis v Le May, supra.) Reasoning similar to that of Curtis — that the co-operator is considerably more than a lessee — accounts for the decision in Bourgeois v Tangerine Realty Corp. (63 Misc 2d 468), wherein co-operator-shareholders were deemed not "tenants” within the meaning of article 7-A of the Real Property Actions and Proceedings Law and therefore not entitled to bring special proceedings for deposit of rents for the purpose of making repairs to the building. In 158th St. Riverside Drive Co. v Launay (NYLJ, April 6, 1976, p 9, col 2) the warranty of habitability defense under section 235-b of the Real Property Law was not held available to a shareholder of a limited-profit co-operative "because a cooperative corporation does not stand in the conventional relationship of landlord to its member tenants” [sic]. If a co-operator cannot avail himself of traditional tenant’s remedies on the express grounds that he is not quite a tenant, then it follows logically that the remedy of a summary proceeding is not available to a co-operative corporation on the grounds that it is not quite a landlord.
Co-operators are concerned with establishing a community of homes and approach the purchase of a co-operative apartment with a great deal more thought than they would a rental unit. "[I]n a very real sense the tenant stockholders enter into a relation not unlike a partnership though expressed in corporate form.” (Penthouse Props, v 1158 Fifth Ave., 256 App Div 685, 691.)
It is therefore a fact that the co-operator’s relationship to the co-operative corporation is not that of landlord and tenant. That being so, there is no jurisdiction in the Housing Court to entertain a nonpayment of rent petition, nor for that matter a holdover petition, wherein a co-operative corporation is the petitioner and the co-operator is the respondent.
Accordingly, the order to show cause is granted, the default judgment is vacated, and the petition is hereby dismissed.