In re Grace **ROBERTSON**, Debtor.

**Bankruptcy No. 92–22017(RG).**

United States Bankruptcy Court,
D. New Jersey.

Oct. 7, 1992.

Elaine Harris, South Orange, N.J., for Grace Robertson.

Chester S. Galloway, McCarter & English, Newark, N.J., for Harrison Park Owners, Inc.

DECISION

NOVALYN L. WINFIELD, Bankruptcy Judge.

This matter is presently before the court on the motion of Harrison Park Owners, Inc. ("Harrison Park") for an order granting relief from the automatic stay and declaring a certain proprietary lease terminated. The court heard oral argument on this matter on April 21, 1992.

This court has considered the oral argument of counsel, the pleadings and legal memoranda submitted by the parties, and makes the following findings of fact and conclusions of law as required by Bankruptcy Rule 7052. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). This court has jurisdiction in accordance with 28 U.S.C. § 1334 and the Standing Order of Reference entered by the United States District Court on July 23, 1984.

## STATEMENT OF FACTS

Harrison Park is the owner of real property in East Orange, New Jersey known as Harrison Park Towers Cooperative Residences (the "Towers"). The Towers is a twenty-one story apartment building with 293 apartments, and is owned under a cooperative form of ownership. Grace Robertson (the "Debtor") is a unit owner of the cooperative and a shareholder in Harrison Park.

On August 27, 1987, the Debtor purchased 385 shares of capital stock of Harrison Park for the price of $79,925.00. These shares were allocated to and gave her possession of Unit 18–M at the Towers. Unit 18–M is the Debtor's primary residence.

Simultaneous with the closing on August 27, 1987, and in order to finance her purchase, the Debtor borrowed $40,000.00 from The Dime Real Estate Services (the "Loan"). The Loan was subsequently assigned to The Dime Savings Bank.[1] As

---

1. For purposes of this opinion, there is no significant difference between The Dime Real Estate Services and The Dime Savings Bank;

security for the Loan, the Debtor executed a loan security agreement and her shares of stock were pledged to The Dime. The Dime also required, as a condition of the Loan, an executed Recognition Agreement whereby Harrison Park agreed to recognize The Dime as the pledged holder of the shares of stock. This agreement contains strict notice provisions which require Harrison Park to notify The Dime of any intention by Harrison Park to terminate the proprietary lease.

Upon the purchase of her shares, the Debtor received a Proprietary Lease enabling her to personally occupy, rent or resell Unit 18–M (the "Proprietary Lease"). As additional security for the Loan, the Debtor assigned the Proprietary Lease to The Dime and gave it a stock power. The Proprietary Lease, including the House Rules, is forty-three pages long and subjects the Debtor to various terms and conditions. In particular, under Paragraph 1, the Debtor is required each year to pay "rent" or "maintenance" in an amount equal to the annual maintenance fee established by the Board of Directors of Harrison Park.[2] The rent reserved is equal to the total cash requirements for the operation of the building over the year, multiplied by the percentage ownership of the individual unit owner's share in the entire corporation. This proportionate amount is divided by twelve and is payable in equal monthly installments.

The Debtor defaulted on the required maintenance payments. On February 19, 1991, after several attempts to collect the delinquent payments, Harrison Park notified the Debtor that due to the default and pursuant to Paragraph 31(d) of the Proprietary Lease, her lease would be terminated and her shares canceled. Harrison Park then instituted an action in the Superior Court of New Jersey, Essex County Law Division (the "Superior Court") seeking a judgment against the Debtor for unpaid

"rent" in the amount of $9,564.90 and for possession of the unit. At no time prior to the institution of the State court action did Harrison Park notify The Dime of its intention to terminate the lease and cancel the shares, nor did it name The Dime as a party in any of its pleadings.

The Debtor failed to respond to Harrison Park's summons and complaint. On October 25, 1991, the Superior Court entered a Final Order of Default in the amount of $9,514.04, including late fees, attorney fees, and costs, and purportedly granted possession of the unit to Harrison Park. A Writ of Possession was then issued by the court on January 24, 1992. By virtue of the Writ, the Essex County Sheriff sent notice to the Debtor that she was required to vacate the premises by March 13, 1992. However, since the Debtor had filed her Chapter 13 bankruptcy petition on March 11, 1992, any action the Sheriff could have taken to physically remove Debtor from the Property was stayed pursuant to 11 U.S.C. § 362(a)(3). Consequently, Harrison Park filed this motion for relief from stay requesting an entry of an order declaring the Proprietary Lease terminated and to permit it to collect its default judgment entered by the Superior Court.

It should be noted that the debt to Harrison Park is listed in the Debtor's schedules, and the Debtor proposes to pay 100% of the debt in her Chapter 13 Plan. Moreover, the Debtor declares her intent to reaffirm that debt in her individual Statement of Intention. Finally, at the time of filing this motion, the Debtor was, and still is, current with her monthly mortgage payments on the Loan, as well as her pre-confirmation payments to the Standing Trustee under the Chapter 13 Plan.

Harrison Park characterizes the Debtor as a tenant and contends that the Proprietary Lease was validly terminated prior to the filing of a bankruptcy petition. It

---

therefore, the two entities are referred to interchangeably as "The Dime".

**2.** In Paragraph 1(a) of the Proprietary Lease, the terms "rent" and "maintenance" are treated as interchangeable terms:

1. (a) The rent (sometimes called "maintenance") ... Such maintenance shall be payable in equal monthly installments, ... The Lessee shall also pay such additional rent.... *See* Proprietary Lease, pp. 1–2; Harrison Park's *Exhibit A*.

therefore reasons that the Proprietary Lease is not property of the estate and cause exists to grant relief from the automatic stay. The Debtor opposes the relief sought on the grounds that she is not merely a lessee of the unit, but is in fact the owner, having purchased the premises for $79,925.00. The Debtor also argues that the Writ of Possession is void because at no time was The Dime properly notified of Harrison Park's intention to terminate the Proprietary Lease. Lastly, the Debtor contends that to allow Harrison Park to take possession of Unit 18–M would be an inequitable result under the facts of this case.

### CONCLUSIONS OF LAW

The issue before this court is whether the Superior Court default judgment terminated the Debtor's Proprietary Lease prior to the commencement of this bankruptcy action, thus extinguishing all of the Debtor's property rights to Unit 18–M.

■ It is a well "recognized principle of bankruptcy law that an executory contract or lease validly terminated prior to the institution of the bankruptcy proceedings, is not resurrected by the filing of the petition in bankruptcy and cannot therefore be included among the debtor's assets." *Kopelman v. Halvajian (Matter of Triangle Laboratories, Inc.)*, 663 F.2d 463, 467–68 (3d Cir.1981) (citations omitted). *See also, In re Indri*, 126 B.R. 443, 445 (Bankr. D.N.J.1991); and *In re Telephonics, Inc.*, 85 B.R. 312, 315 (Bankr.E.D.Pa.1988). Consequently, cause exists for granting relief from the automatic stay when an executory contract is validly terminated prior to the commencement of a bankruptcy case. However, if the termination of an executory contract is not valid, the contract is property of the estate, and accordingly, the Chapter 13 debtor may assume or reject the contract pursuant to the terms of 11 U.S.C. §§ 365 and 1322.

Counsel for Harrison Park acknowledges that there is no reported case law in New Jersey directly on point. However, he argues that the facts in this case and the cooperator/cooperative relationship are analogous to a traditional landlord/tenant relationship under which the landlord may terminate the tenant's lease for failure to pay rent. Therefore, he reasons, since New Jersey law provides that the issuance of a Writ of Possession terminates the tenant's right to possession of the leased premises, that in this case, so too a Writ of Possession terminates the cooperator's right to possession under a proprietary lease. Accordingly, Harrison Park argues, the Debtor's interest in her unit was terminated before the bankruptcy petition was filed, and the Debtor has no right to cure her lease defaults pursuant to a Chapter 13 plan.

Counsel for Harrison Park argues in the alternative that if the court is unwilling to apply the principles of landlord/tenant law to this case, it should look to New Jersey foreclosure law for guidance. Specifically, Harrison Park asserts that the judgment of possession is the functional equivalent to a foreclosure judgment, and therefore, upon entry of the judgment, the Proprietary Lease merged with the judgment and ceased to exist.

The court does not find either argument persuasive for the reasons set forth herein.

### I. Landlord/Tenant Relationship vs. Cooperator/Cooperative Relationship

This matter could be easily concluded if this case merely involved a traditional landlord/tenant relationship. If that were so, the result would clearly be in favor of Harrison Park. However, in the present case, the relationship between the Debtor and Harrison Park is not strictly that of a landlord and tenant. Rather, Harrison Park is a cooperative association (sometimes referred to as the "cooperative"), the Debtor is a cooperator/shareholder (sometimes referred to as the "cooperator"), and a proprietary lease is an occupancy agreement which defines the relationship between them. A discussion of the differences between the two relationships will help to clarify the inherent problems with the plaintiff's argument.

The New Jersey Legislature has stated that a cooperative "is a hybrid transaction

which is not capable of classification entirely as realty or personalty...." N.J.S.A. 46:8D–2. A cooperative is defined as:

> any system of land ownership and possession in which the fee title to the land and structure is owned by a corporation or other legal entity in which the shareholders or other coowners each also have a long term proprietary lease or other long term arrangement of exclusive possession for a specific unit of occupancy space located within the same structure.

N.J.S.A. 46:8D–3(f).

█ New Jersey courts have stated that under New Jersey law, the relationship between a cooperative and a cooperator is not the same as that between a landlord and a tenant. *See Plaza Road Cooperative, Inc. v. Finn,* (*"Plaza Road"*) 201 N.J.Super. 174, 181, 492 A.2d 1072, 1077 (App.Div. 1985) and *Essex Property Services v. Wood,* 246 N.J.Super. 487, 490, 587 A.2d 1337, 1339 (1991). This is true "regardless of any provision of the occupancy agreement attempting to consensually define it as [a landlord/tenant relationship]." *Plaza Road,* 201 N.J.Super. at 179, 492 A.2d 1072, *citing Jimerson Housing Co. v. Butler,* 97 Misc.2d 563, 412 N.Y.S.2d 560 (Civ.Ct.1978).

Although courts have acknowledged that cooperative housing interests are a hybrid form of ownership, for purposes of determining if a lien has been properly perfected or whether the statute of frauds applies to the sale of such interests, the courts have stated that cooperatives are more properly characterized as realty under New Jersey law. *See In re McGuinness,* 139 B.R. 3, 5 (Bankr.D.N.J.1992), *citing Presten v. Sailer,* 225 N.J.Super. 178, 190, 542 A.2d 7 (App.Div.1988).[3] Likewise, a shareholder generally perceives himself as a homeowner. Note, *Legal Characterization of the Individual's Interest in a Cooperative Apartment: Realty or Personalty?,* 73 Colum.L.Rev. 250, 260 (1973).

"A 'cooperative' generally connotes an apartment building in which the owner holds title to all premises and grants rights of occupancy to a particular apartment or unit by means of a proprietary lease or similar arrangement." *AMR Realty Co. v. State Bureau of Securities,* 149 N.J.Super. 329, 334, 373 A.2d 1002, 1004 (App.Div. 1977). "The difficulty in classifying or defining the owner-occupant status in legal concepts has caused confusion, and a cooperative is frequently described as a building in which each 'tenant' 'owns' an apartment, an obvious contradiction of terms." *Plaza Road,* 201 N.J.Super. at 175, 492 A.2d 1072.

The Legislature has recognized the similarities between traditional home ownership and ownership of stock in a cooperative corporation by granting certain economic benefits to cooperators that are not available to tenants. For example, New Jersey's Transfer Inheritance Tax treats such ownership as realty so that the tax does not apply to a surviving spouse who jointly owned a proprietary lease with the decedent. N.J.S.A. 54:34–1f. Therefore, the same exceptions from taxes that apply to real estate also apply to a cooperative apartment. Congress has also treated cooperators as owners of realty. Under federal tax law a cooperator/shareholder may deduct an allocable share of real estate taxes and mortgage interest on the federal income tax return. *See* 26 U.S.C.A. § 216 (West Supp.1987).[4] Tenants are not entitled to any such benefits.

A cooperative corporation issues stock of a total par value equal to the purchase price of the apartment unit. Typically, a party who wishes to "buy" an apartment

---

**3.** In *Presten* the issue before the court was whether the statute of frauds applies to the sale of shares and lease of a cooperative apartment. The court held that the sale of cooperative housing interests falls within the statute of frauds provision with respect to sales of realty. *Presten* at 194, 542 A.2d 7.

**4.** Most owners of cooperatives take on two debts when they buy a unit: their own mortgage on the unit and their share of any mortgage the cooperative has on the building. Shareholders are entitled to take tax deductions for their share of the interest portion of their building's underlying mortgage. A tenant does not take any responsibility for any mortgage, and therefore, no such tax deductions are available to tenants.

pays a price equal to the monetary value of the apartment, not for the apartment itself, but for the shares in the corporation of an equal par value which are appurtenant to it. The buyer is then issued a proprietary lease to a particular apartment unit for the life of the corporation. *State v. Nelson*, 63 Wash.2d 299, 300, 387 P.2d 82, 83 (1963). A tenant, on the other hand, has only temporary use and occupation of real property owned by another and usually pays rent for such use and occupancy based on the prevailing market condition or the needs of the landlord.

Although it is true that cooperators/shareholders pay monthly maintenance charges in much the same manner as tenants pay rent, unlike the tenant, they have a substantial stake in the survival of the cooperative corporation. The monthly maintenance payments do not include an element of profit. Rather they are calculated to produce the funds necessary for the preservation and maintenance of the real property which is owned by the cooperative association, of which the cooperator is a shareholder. Furthermore, unlike the typical tenant situation, cooperators/shareholders are dependent upon one another. If one fails to pay maintenance charges, the others must carry the burden. *See Drew Associates of NJ, LP v. Travisano*, 122 N.J. 249, 255, 584 A.2d 807, 809 (1991).

A proprietary lease in New Jersey is defined as "a grant of a long term exclusive right of possession and occupancy of a designated unit to a coowner or a grant of a leasehold of the cooperative structure." N.J.S.A. § 46:8D–3(k). In order to obtain a proprietary lease, the "lessee" must be a shareholder in the cooperative.

A careful review of the terms of a proprietary lease makes it clear that it is very different from a traditional lease. The court in *Plaza Road* examined the terms of a similar proprietary lease to demonstrate the differences between a proprietary lease and a traditional lease. The following discussion by the Appellate Division of the Superior Court of New Jersey is applicable to the facts in this case: [5]

The provisions of the owner-occupant agreement between the parties may be divided into two categories: (1) those which may be found in any lease agreement setting forth the rights and obligations of the landlord and tenant; and (2) those which become necessary due to the occupants' hybrid position of being both an occupant of a single apartment unit and having an ownership interest in the entire apartment building.

Examples of the former are provisions:
1. Requiring the cooperative association to maintain the exterior and common areas of the building. [¶ 3.]
2. Defining obligations in case of fire damage to the unit or the building. [¶ 4.]
3. Giving the occupant a right to quiet possession. [¶ 10.]
4. Establishing rules and regulations concerning conduct on the premises. [¶ 13.]
5. Limiting who may occupy an apartment. [¶ 14.]
6. Limiting actions of an occupant which may affect insurance rates. [¶ 20.]
7. Limiting the occupants' right to make alterations. [¶ 21(a).]
8. Defining rights of entry to make repairs. [¶ 25.]

Examples of the latter are:
1. Defining 'rent' as a share of actual carrying charges and maintenance expenses for the building allocated in relation to the total number of shares of the cooperative corporation issued. [¶ 12.]
2. Limiting the cooperative association's liability for maintaining the public areas and providing insufficient supply of hot and cold water and heat by stating:.... [¶ 3.... **The covenants by the Lessor herein contained are subject, however, to the discretionary power of the Di-**

---

**5.** The bracketed bold type language throughout the quotation is taken directly from the Proprietary Lease between Harrison Park and the Debtor, along with reference to the appropriate paragraph of the Proprietary Lease. The terms of the Proprietary Lease are strikingly similar to those quoted in the *Plaza Road* case.

rectors to determine from time to time what services and what attendants shall be proper and the manner of maintaining and operating the building, and also what existing services shall be increased, reduced, changed, modified or terminated.]

3. Giving the 'tenant' the right to inspect the 'landlord's' books of record by stating: .... [¶ 5. The Lessor shall keep full and correct books of account at its principal office or at such other place as the Directors may from time to time determine, and the same shall be open during all reasonable hours to inspection by the Lessee or a representative of the Lessee. The Lessor shall deliver to the Lessee within a reasonable time after the end of each fiscal year an annual report of corporate financial affairs, including a balance sheet and a statement of income and expenses, certified by an independent certified public accountant.]

4. Promoting a cooperative venture by stating:.... [¶ 24. The Lessee shall always in good faith endeavor to observe and promote the cooperative purposes for the accomplishment of which the Lessor is incorporated.]

5. Limiting liability of the 'landlord' to provide needed services by stating: .... [¶ 29(a). The Lessor shall not be liable, except by reason of the Lessor's negligence, for any failure or insufficiency of heat, or of air conditioning (where air conditioning is supplied or air conditioning is maintained by the Lessor), water supply, electrical current, gas, telephone, or elevator service or other service to be supplied by the Lessor hereunder, or for the interference with light, air, view or other interests of the Lessee....]

6. Granting the 'landlord' the unilateral right to terminate the agreement by stating:.... [¶ 31. If upon, or at any time after the happening of any of the events mentioned in subdivisions (a) to (j) inclusive of the Paragraph 31, the Lessor shall give to the Lessee a notice stating that the term hereof will expire on a date at least five days thereafter, the term of this lease shall expire on the date so fixed in such notice as fully and completely as if it were the date herein definitely fixed for the expiration of the term, and all right, title and interest of the Lessee hereunder shall thereupon wholly cease and expire, and the Lessee shall thereupon quit and surrender the apartment to the Lessor, it being the intention of the parties hereto to create hereby a conditional limitation, and thereupon the Lessor shall have the right to re-enter the apartment and to remove all persons and personal property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law or in equity, or by force or otherwise, and to repossess the apartment in its former estate as if this lease had not been made, and no liability whatsoever shall attach to the Lessor by reason of the exercise of the right of re-entry, repossession and removal herein granted and reserved:]

Among other reasons for giving notice of termination are: .... [¶ 31(d). If the Lessee shall be in default for a period of one month in the payment of any rent or additional rent or of any installment thereof and shall fail to cure such default within ten days after written notice from the Lessor.]

[¶ 31(f). If at any time the Lessor shall determine, upon the affirmative vote of the record holders of at least 66⅔% in amount of its then issued and outstanding shares, at a shareholder's meeting duly called for that purpose, that because of objectionable conduct on the part of the Lessee, or of a person dwelling or visiting in the apartment, repeated after written notice from the Lessor, the tenancy of the Lessee is undesirable....]

8. Waiving 'tenant's' 'right of redemption' by stating:.... [¶ 33. The Lessee hereby expressly waives any and all right of redemption in case the Lessee shall be dispossessed by judgment or warrant of any court or judge. The words 'enter', 're-enter' and 're-entry' as

used in this lease are not restricted to their technical legal meaning. ....

¶ 43. In the event of a breach or threatened breach by Lessee of any provision hereof, the Lessor shall have remedy at law or in equity, as if re-entry, summary proceedings and other remedies were not herein provided for, and the election of one or more remedies shall not preclude the Lessor from any other remedy.]

9. Acknowledging that the 'tenant' is also a 'landlord' and, therefore, waiving certain defenses available to 'tenants' in summary dispossess actions, by providing:.... [¶ 45. The Lessee may not institute an action or proceeding against the Lessor or defend, or make a counterclaim in any action by the Lessor related to the Lessee's failure to pay rent, if such action, defense or counterclaim is based upon the Lessor's failure to comply with its obligations under this lease or any law, ordinance or governmental regulation unless such failure shall have continued for thirty days after the giving of written notice thereof by the Lessee to the Lessor.][6]

*Plaza Road,* 201 N.J.Super. at 176–178, 492 A.2d 1072.

Likewise, the role of the cooperator/shareholder is not the same as that of the typical tenant. Nor does the function of the cooperative achieve the same results of the landlord/tenant relationship. As stated previously, the cooperator/shareholder is entitled to occupancy permanently for the life of the cooperative corporation. The tenant does not have such security, in fact, his occupancy is limited to the term of the lease, or if there is no written lease, to a month to month tenancy. The cooperator is a stockholder-occupant who pays one lump sum (as the Debtor did in this case) at the beginning of the cooperative/cooperator relationship for the ownership of the unit and then continues to pay monthly maintenance costs for the expenses incurred in operation of the cooperative corporation. The tenant merely rents a space and pays an equal sum in installments for the duration of his or her tenancy. The cooperators/shareholders are responsible for the expenses related to maintaining the premises amongst themselves. If one cooperator/shareholder fails to make a monthly payment, the other cooperators/shareholders are responsible for that payment. By contrast, the tenant is solely responsible for his monthly payments and depends upon the landlord to properly maintain the premises. If that tenant fails to pay his rent, he subjects himself to removal from the premises. Finally, a cooperative generally is not a money making venture. On the other hand, a landlord rents to tenants for the landlord's own economic benefit.

Harrison Park relies upon *Parks v. Cardone (In re Cardone),* 103 B.R. 504 (Bankr. D.Del.1989); *In re Jones,* 118 B.R. 395 (Bankr.D.S.C.1989); and *Sudler v. Chester Housing Authority (In re Sudler),* 71 B.R. 780 (Bankr.E.D.Pa.1987) to support its argument that the Debtor's interest in her cooperative apartment was terminated prior to the bankruptcy petition, and thus, the automatic stay should not prevent it from obtaining possession of the unit. However, these cases include a fundamental element missing from the case at hand: the existence of a pure landlord/tenant relationship. Due to the numerous differences between the cooperator/cooperative relationship and the landlord/tenant relationship, Harrison Park's reliance on these cases is misplaced.

 Throughout its brief, Harrison Park refers to the Debtor as a *tenant* or *lessee* and eschews any reference to the Debtor's ownership interest in her apartment. However, as demonstrated *supra,* a proprietary lease creates the hybrid relationship of the cooperator and cooperative which more strongly resembles that of outright ownership than that of a leasehold interest. Additionally, there remains the ownership interest in the shares of stock which is personal in nature. Therefore, the traditional remedies for gaining possession of leased

---

**6.** While this paragraph does not provide for the complete waiver of all potential defenses to a action for possession, as a practical matter, a "Lessee" could unknowingly waive such defenses out of ignorance of the terms of this forty-three page Proprietary Lease.

property are not necessarily sufficient in a cooperative situation.

■ New Jersey Statutes provide three avenues for gaining possession of leased premises. The statutes provide for: (i) an action for possession for nonpayment of rent pursuant to N.J.S.A. 2A:42–7; (ii) an action for ejectment or an action for the possession of land pursuant to N.J.S.A. 2A:35–1 et seq; and (iii) to terminate a residential lease, an action for summary dispossession brought in the special civil part for landlord/tenant matters of the Superior Court pursuant to N.J.S.A. 2A:18–61.1.

An action for possession for nonpayment of rent pursuant to N.J.S.A. 2A:42–7,[7] like the statute governing summary dispossess actions, contemplates a landlord/tenant relationship. *See* N.J.S.A. 2A:42–10.8.[8] One of the differences in the two actions is that in an action for possession, the plaintiff may seek recovery of unpaid rent in addition to recovery of the property in the same complaint; however, in a summary dispossess action the plaintiff may only seek recovery of the property.

An action for ejectment or an action for the possession of land as set forth in N.J.S.A. 2A:35–1 et seq. is an action in Superior Court to determine who is entitled to the immediate and exclusive possession of the real estate in controversy. *See Hoboken Land & Imp. Co. v. Hoboken*, 36 N.J.L. 540, 543 (E. & A. 1873). The action for the possession of land lies to recover possession of a leasehold, as well as a freehold. *Kirschler v. Albanesius*, 13 N.J.Misc. 366, 367, 178 A. 568, 569 (Com.Pl. 1935). An action for ejectment lay in any case where the claimant had the title or the right to the possession of the premises in

question. *Marder v. Realty Const. Co.*, 84 N.J.Super. 313, 202 A.2d 175, affirmed, 43 N.J. 508, 205 A.2d 744 (1964). The plaintiff is entitled to recover incidental damages, including mesne profits [9], and the full value of the use and occupation of the premises for the time during which defendant was in possession. N.J.S.A. 2A:35–2.

The court in *Plaza Road* held that the relationship of a cooperative/cooperator is not one of landlord/tenant for purposes of summary dispossess actions. Unfortunately, diligent inquiry has not yielded any reported case law which discusses the utility of the other actions listed above for the termination of a cooperator's possessory rights under a Proprietary Lease.

In short, it appears that New Jersey case law is not developed regarding the remedies available to cooperative associations when a cooperator/shareholder fails to make the required "rent"/maintenance payments. Likewise the New Jersey statutes are silent on this issue. Given the lack of statutory guidance and the dearth of reported case law, this court cannot readily ascertain whether New Jersey courts would determine that the entry of the default judgment and the subsequent issuance of a writ of possession terminates *all* of the Debtor's ownership interest in Unit 18–M under New Jersey law.

Against the backdrop of this unformed state of the law, this court must determine the effect of Harrison Park's actions on the cooperative apartment which the Debtor alleges is property of the bankruptcy estate.

Some insight on this issue can be gleaned from the case of *Harrison Park Owners, Inc. v. Dixon* ("*Dixon*"), 254 N.J.Super. 605, 604 A.2d 165 (App.Div.1992). In that

---

**7.** 2A:42–7. Action for possession for nonpayment of rent; service of summons

A landlord or lessor to whom 1 year's rent in arrear is due, and who shall have the right to re-enter the demised premises for nonpayment thereof, may without a formal demand or re-entry, institute an action for the possession of such premises....

**8.** 2A:42–10.3. Applicability

This act shall be applicable only to those premises or units which on June 30, 1956,

shall be subject to rent controls pursuant to the State Rent Control Act of 1953, as amended and supplemented, and municipal ordinances enacted thereunder and to any action or proceeding by a landlord against a tenant to recover possession of any such premises or unit.

**9.** Mesne profits are defined as intermediate profits. *Black's Law Dictionary* 893 (5th ed. 1979).

action, Harrison Park, the movant herein, brought an action to recover "rent" and for possession of a unit in the Towers. The alleged default consisted of approximately $5,000 to $5,500. The defendant had withheld payments from Harrison Park and claimed that Harrison Park had failed to make necessary repairs, however, he did so on an informal basis and did not file any documents with the court to prevent the entry of a default against him. The court did not discuss how much the defendant paid for his unit or how much equity he had in the unit. The court, in reaching it's conclusion that the default judgment should be vacated, commented as follows regarding ejectment of a cooperator:

> Recent cases and statutory enactments tend to blur the distinction between cooperatives and condominiums. *See Presten v. Sailer*, 225 N.J. Super. 178, 542 A.2d 7 (App.Div.1988); *Plaza Road Co Op, Inc. v. Finn*, 201 N.J. Super. 174, 492 A.2d 1072 (App.Div.1985); N.J.S.A. 46:8A–1 *et seq.*; N.J.S.A. 46:8D–1 *et seq.*; N.J.S.A. 46:18–61.1 and 61.2. We need not in this appeal explore further whether, and under what circumstances a cooperative corporation may obtain ejectment of its shareholder, or possession of a co-operative unit for nonpayment of maintenance charges, particularly where the dollar amount in dispute is low in proportion to the proper value of the unit. It may be argued that the owner retaking possession for minor breaches or disagreements is akin to a disfavored forfeiture, notwithstanding the available remedies in the "Proprietary Lease." Obtaining possession of a unit from a shareholder because of a dispute over a relatively small amount may be a rather harsh remedy when a money judgment and a lien, with the usual collection process, might well serve as an alternate and more equitable approach.

*Harrison Park Owners, Inc. v. Dixon* ("*Dixon*"), 254 N.J.Super. 605, 612, 604 A.2d 165 (App.Div.1992).

In the Superior Court action for possession, Harrison Park relied on the tenancy-type provisions in the Propriety Lease when it sought possession as well as money damages. Harrison Park sought ejectment or possession essentially as a landlord against a tenant, monetary damages and cancellation of the Debtor's shares of stock.[10] Having concluded that the cooperative/cooperator relationship is not the same as or analogous to a landlord/tenant relationship, and that the traditional notion of "lease" does not apply in this context, it follows that the court cannot grant Harrison Park's motion. The action commenced by Harrison Park was premised on a landlord/tenant relationship, and therefore, just as an action for summary dispossession is not a proper vehicle to terminate the possessory rights of a cooperator, the instant action was not a sufficient vehicle to terminate the Debtor's rights to her property.

It is also noteworthy that the remedies available to plaintiffs who bring actions for possession under N.J.S.A. 2A:42–7 or N.J.S.A. 2A:35–1 are limited to possession of the property and monetary damages. Even if the Superior Court's default judgment can be said to entitle Harrison Park to possession of the unit, and damages in the amount of $9,514.04, under the express statutory language it could not cancel the shares of stock held by the Debtor.

Under the Bankruptcy Code, an estate is comprised of "... all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). The Supreme Court has determined that the term "property" in Section 541 should be interpreted as broadly as possible to give effect to congressional purpose of encouraging reorganization. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Before the Debtor filed her petition for relief, and prior to the entry of the default judgment, the Debtor had a property interest in (i) 385 shares of capital stock in Harrison Park, and (ii) the Proprietary Lease which gave her the right to

---

**10.** It is not clear to the court why a judgment for money damages with subsequent execution would not have been an adequate remedy.

occupy, lease or sell Unit 18–M. The stock is in the nature of personalty while the Proprietary Lease is in the nature of realty. These two property interests are intertwined, and the possession of one without the other is virtually worthless. In fact, the two interests are inseparable. A proprietary lease does not by itself create a possessory right to a cooperative apartment, but rather sets forth the rules by which an occupant must abide. Likewise, the mere ownership of shares in a cooperative association does not grant the shareholder possession of a cooperative apartment. Harrison Park's assumption that a cooperative association can terminate the possessory rights of a cooperator/shareholder to her cooperative apartment simply by terminating the proprietary lease through a state court action for possession or ejectment is incorrect. As stated above, the remedies available to plaintiffs who bring actions for possession under N.J.S.A. 2A:42–7 or N.J.S.A. 2A:35–1 are limited to possession of the property and monetary damages, and do not include cancellation of the shareholder's stock.

At the commencement of this case and in spite of the default judgment, the Debtor still retained a property interest in Unit 18–M.[11] The Debtor's rights to her shares of stock as personal property cannot be extinguished by a state court action for possession or for ejectment. With this in mind, this court concludes the action taken by Harrison Park in an attempt to terminate all of the Debtor's property interests in the

cooperative was unsuccessful. Even if the Proprietary Lease was arguably terminated as of the petition date, the Debtor's shares of stock had not been cancelled and they alone are sufficient to constitute property of the estate under Section 541 which must be afforded protection.

Additional terms of the Proprietary Lease must also be examined for a complete understanding of why the court is denying the motion. Under the terms of the Proprietary Lease, even after Harrison Park has successfully taken possession of a unit, the evicted cooperator/shareholder has the duty to continue to pay the monthly equivalent of "rent" until the unit is relet by Harrison Park, and a final accounting is completed. Proprietary Lease, ¶ 32(a).[12] This continuing obligation without the right to occupy the premises would be an undue burden on the Debtor and the Debtor's estate. Not only would the Debtor be obliged to continue to make "rent" payments, she would also have to make her monthly mortgage payments to the Bank. At the same time she would have to pay for a new place to live.

■ To further support its conclusion, the Court relies on the maxim that: "[a] court of equity abhors forfeitures, and will not lend its aid to enforce them." *Jones v. Guaranty and Indemnity Co.*, 101 U.S. 622, 628, 25 L.Ed. 1030 (1879) (citation omitted). In view of the purpose of the Proprietary Lease, the termination of such lease due to Debtor's failure to make

---

**11.** The Proprietary Lease provides, *inter alia,* that upon termination of the lease, the shareholder/tenant shall surrender the shares of stock to the cooperative association, and if the shares are not so surrendered, new shares may be issued by the association to a new shareholder/tenant when a purchaser therefore is obtained. Proprietary Lease, ¶ 32(c). In this instance, the Debtor did not surrender the shares and the association had not yet issued new shares. Pursuant to ¶ 32(c) the Debtor's stock certificate would not be cancelled until the issuance of a new proprietary lease and a new stock certificate.

**12.** Paragraph 32(a) provides, *inter alia,* that [t]here shall be a final accounting between the Lessor and the Lessee upon the earliest of the four following dates: (A) the date of expira-

tion of the term of this lease as stated on page 1 hereof; (B) the date as of which a new proprietary lease covering the apartment shall have become effective; (C) *the date the Lessor gives written notice to the Lessee that it has relet the apartment for its own account;* (D) the date upon which all proprietary leases of the Lessor terminate. *From and after* the date upon which the Lessor becomes obligated to account to the Lessee, as above provided, ... the Lessee shall have no further liability for sums thereafter accruing hereunder, but such termination of the Lessee's liability shall not affect any liabilities theretofore accrued.... The Lessor shall not, however, be obliged to sell such shares and appurtenant lease or otherwise make any attempt to mitigate damages. Proprietary Lease, ¶ 32(a) (emphasis added).

monthly maintenance payments, which are disproportionately small in comparison to her purchase price, clearly produces an inequitable result. "Obtaining possession of a unit from a shareholder because of a dispute over a relatively small amount may be a rather harsh remedy when a money judgment and a lien, ..., might well serve as an alternate and more equitable approach." *Dixon*, 254 N.J.Super. at 612, 604 A.2d 165. It should be noted that the Debtor proposes to pay the entire obligation to Harrison Park through her Chapter 13 Plan.

## II. *Mortgage Foreclosure Judgment v. Judgment of Possession*

■ In oral argument, counsel for Harrison Park stated that if the court is not willing to apply the principles of landlord/tenant law and analogize them to the unique relationship created by a cooperative, then the court should look to New Jersey foreclosure law for guidance. Specifically, Harrison Park relies on the *In re Roach*, 824 F.2d 1370 (3d Cir.1987) for the proposition that once the judgment of possession entered against the Debtor the Proprietary Lease ceased to exist. In *Roach* the Chapter 13 debtor asserted the right to cure a default in a mortgage after a foreclosure judgment had been entered in favor of the mortgagee. In reaching its conclusion, the court found that in New Jersey when a final judgment of foreclosure is entered, the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished. Therefore, after entry of judgment, there is no mortgage that can be cured and restored. The *Roach* case held that a Chapter 13 debtor's right to cure a mortgage default expires when the mortgagee obtains a judgment of foreclosure.

Harrison Park argues that its judgment of possession is the "functional equivalent" to a judgment of foreclosure and asks the court to apply by analogy the reasoning in *Roach*. However, the facts are too different in this case to make such an analogy appropriate. *Roach* involved the rights of a debtor vis a vis a secured creditor and involved application of long standing principles of New Jersey foreclosure law. This case involves the rights of a debtor vis a vis an unsecured creditor. Absent a mortgagor/mortgagee relationship Harrison Park's argument lacks applicability.

## III. *Conclusion*

This court recognizes that cooperative associations must have remedies to protect themselves from the consequences of defaults by individual cooperators. However it questions whether ejectment is an appropriate remedy for defaults in payment of maintenance obligations, and in the absence of greater guidance from the New Jersey Legislature or the courts of the State of New Jersey, it will not so find. The Debtor's interest in her cooperative apartment was not terminated prior to the petition. Therefore, said interest is property of the bankruptcy estate protected by the automatic stay and the Debtor has the right to cure the monetary defaults under the Proprietary Lease in the context of her Chapter 13 Plan. Consequently, Harrison Park's motion must be and hereby is denied.